# No. 15-3335

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARVEL ENTERTAINMENT, LLC, as Successor to
Marvel Entertainment, Inc., f.k.a. Marvel Enterprises, Inc.
and as agent for members of Marvel Enterprises, Inc.
and Subsidiaries Group,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

## BRIEF FOR THE APPELLEE

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG     **(202) 514-3361**
THOMAS J. CLARK              **(202) 514-9084**
DEBORAH K. SNYDER          **(202) 305-1680**
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

13842482.1

# TABLE OF CONTENTS

**Page**

Table of contents...................................................................i
Table of authorities ............................................................ iii
Glossary ...........................................................................ix
Statement of jurisdiction......................................................1
Statement of the issue.........................................................2
Statement of the case .........................................................3

    A.    Procedural history...........................................3

    B.    Statutory context ..........................................4

        1.    Section 108(b) of the Code requires net
               operating losses to be reduced by the
               amount of cancellation-of-indebtedness
               income excluded under § 108(a) ..........................4

        2.    An overview of consolidated returns ...................6

    C.    Marvel group members excluded more than $171
        million in cancellation-of-indebtedness income
        under § 108(a) ...............................................8

    D.    Marvel limited the reach of § 108(b) by
        apportioning separate net operating losses to the
        group members...........................................10

    E.    The notice of deficiency...............................13

    F.    Tax Court proceedings ................................13

Summary of argument ........................................................16
Argument.........................................................................18

    The Tax Court correctly held that Marvel must reduce
    the group's entire consolidated net operating loss,
    without apportionment, by the full amount of excluded
    cancellation-of-indebtedness income ...................18

Standard of review ............................................................... 18

A. The Tax Court correctly held that the group's entire consolidated net operating loss was subject to reduction under § 108(b) ....................................... 18

    1. The Tax Court properly applied the consolidated return rules as interpreted by the Supreme Court in *United Dominion* ............ 18

    2. Marvel has shown no error in the Tax Court's reliance on *United Dominion* ................. 24

B. Marvel's remaining arguments lack merit ................. 30

    1. The Tax Court correctly rejected Marvel's construction of § 108 ........................................... 30

    2. Marvel misplaces its reliance on a selective reading of the legislative history ........................ 37

    3. Marvel has not preserved its new *Prudential Lines* argument, which lacks merit in any event ................................................ 40

        a. This Court should not consider Marvel's new *Prudential Lines* argument ..................................................... 40

        b. Marvel's new argument, if considered, should be rejected ...................................... 43

    4. The consolidated return regulations support the Tax Court's decision in this case, not Marvel's contrary position ................................. 48

    5. Marvel has not preserved its baseless APA argument ........................................................... 51

Page

    a.    This Court should not consider
        Marvel's new APA argument.....................51

    b.    Marvel's new APA argument is
        baseless ....................................................51

Conclusion ....................................................................57
Certificate of compliance...............................................58
Certificate of service......................................................59

## TABLE OF AUTHORITIES

**Cases:**

*Albino v. Commissioner,*
    273 F.2d 450 (2d Cir. 1960)...............................55
*Atl. City Elec. Co. v. Commissioner,*
    288 U.S. 152 (1933) ............................................6
*Auer v. Robbins,*
    519 U.S. 452 (1997) ..........................................56
*Ax v. Commissioner,*
    146 T.C. No. 10, 2016 WL 1446066 (Apr. 11, 2016) ...........52
*In re Bob Richards Chrysler-Plymouth Corp., Inc.,*
    473 F.2d 262 (9th Cir. 1973) .............................47
*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945) ..........................................56
*Caiola v. Citibank, N.A.,*
    295 F.3d 312 (2d Cir. 2002).............................41-42
*Capital Bankshares, Inc. v. FDIC,*
    957 F.2d 203 (5th Cir. 1992) .............................47
*Central States, Southeast & Southwest Areas Pension Fund v.
    Waste Mgmt. of Mich., Inc.,*
    674 F.3d 630 (7th Cir. 2012) .............................41
*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ............................................7

**Cases (cont'd):**                                                      **Page(s)**

*Citizens Against Casino Gambling in Erie County v. Chaudhuri,*
802 F.3d 267 (2d Cir. 2015) .................................................. 35

*In re Cmty. Bancorp,*
2013 WL 4441925 (9th Cir. 2013) ....................................... 47

*Falconwood Corp. v. United States,*
422 F.3d 1339 (Fed. Cir. 2005) .............................................. 7

*First Chicago Corp. v. Commissioner,*
96 T.C. 421 (1991), *aff'd,* 135 F.3d 457 (7th Cir. 1998) ......... 8

*Freytag v. Commissioner,*
501 U.S. 868 (1991) ............................................................. 52

*Gottesman & Co., Inc. v. Commissioner,*
77 T.C. 1149 (1981) ........................................................ 55-56

*Grove Equity, Inc. v. Commissioner,*
67 T.C.M. (CCH) 2381 (1994) ................................................ 8

*Harper v. Va. Dep't of Taxation,*
509 U.S. 86 (1993) ............................................................... 54

*INDOPCO, Inc. v. Commissioner,*
503 U.S. 79 (1992) ............................................................... 55

*In re Indymac Bancorp, Inc.*
554 Fed. Appx. 668 (9th Cir. 2014) ..................................... 47

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,*
412 F.3d 418 (2d Cir. 2005) .................................................. 31

*Long Island Care at Home, Ltd. v. Coke,*
551 U.S. 158 (2007) ............................................................. 56

*In re Marvel Entertainment Group, Inc.,*
273 B.R. 58 (D. Del. 2002) ............................................... 45-46

*Mayo Found. for Med. Educ. & Research v. United States,*
562 U.S. 44 (2011) ................................................................. 7

*Megibow v. Clerk of the U.S. Tax Court,*
2004 WL 1961591 (S.D.N.Y. 2004), *aff'd,*
432 F.3d 387 (2d Cir. 2005) .................................................. 52

*Mhany Mgmt., Inc., v. County of Nassau, __ F.3d __,*
2016 WL 1128424 (2d Cir. March 23, 2016) .............. 41-43, 51

*In re NetBank, Inc.,*
729 F.3d 1344 (11th Cir. 2013) ........................................... 47

**Cases (cont'd):**                                                **Page(s)**

*Nichols v. United States,*
  260 F.3d 637 (3d Cir. 2001)...................................... 7

*Noble v. Chrysler Motors Corp., Jeep Div.,*
  32 F.3d 997 (6th Cir. 1994) .................................... 41

*In re Nortel Networks Corp. Sec. Litig.,*
  539 F.3d 129 (2d Cir. 2008)................................... 42

*In re Prudential Lines Inc.,*
  928 F.2d 565 (2d Cir. 1991)............................... 40-47

*Sooner Fed. Sav. & Loan Ass'n v. United States,*
  4 Cl. Ct. 746 (1984)............................................... 8

*South Dakota v. Yankton Sioux Tribe,*
  522 U.S. 329 (1998) ............................................ 35

*Suncal Communities I LLC v. Lehman Commercial Paper, Inc.,*
  402 Fed. Appx. 634 (2d Cir. 2010) .................... 41-42

*Taggi v. United States,*
  35 F.3d 93 (2d Cir. 1994)..................................... 55

*Temple-Inland Inc. v. United States,*
  68 Fed. Cl. 561 (2005) ........................................ 31

*Union Elec. Co. of Mo. v. United States,*
  305 F.2d 850 (Ct. Cl. 1962) ................................... 7

*United Dominion Indus., Inc. v. United States,*
  208 F.3d 452 (4th Cir. 2000), *rev'd,*
  532 U.S. 822 (2001) ............................................ 27

*United Dominion Indus., Inc. v. United States,*
  532 U.S. 822 (2001) ...................... 15-30, 33, 44-50
                                             53-54, 56-57

*United States v. Kirby Lumber Co.,*
  284 U.S. 1 (1931) ................................................. 4

*Vons Companies, Inc. v. United States,*
  51 Fed. Cl. 1 (2001) ............................................ 50

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005)............................... 41-42

*White v. United States,*
  305 U.S. 281 (1938) ............................................ 55

**Cases (cont'd):**                                  **Page(s)**

*Wolter Constr. Co., Inc. v. Commissioner,*
    634 F.2d 1029 (6th Cir. 1980) ...................................... 7-8, 35
*Zervos v. Verizon N.Y., Inc.,*
    252 F.3d 163 (2d Cir. 2001) .................................................. 46

**Statutes:**

5 U.S.C. § 551 ............................................................................. 52

11 U.S.C. § 362(a)(3) .................................................................. 43

Internal Revenue Code of 1986 (26 U.S.C):

    § 61(a)(12) .................................................................... 4
    § 108 .................................. 18, 30-34, 37-39, 43, 46-47, 49, 53
    § 108(a) ......................................... 4-6, 8, 13, 31-32
    § 108(a)(1) ........................................................... 10
    § 108(a)(1)(A) .............................................. 4, 10, 31
    § 108(b) ......................................2-6, 10, 12-14, 17-18, 23-26
                              30-31, 33, 37, 48, 57
    § 108(b)(1) ...................................................... 31, 36
    § 108(b)(2) .................................................. 5, 10, 39
    § 108(b)(2)(A) ........................... 5, 16, 18-19, 23, 25, 29-31, 36
    § 108(b)(3) .................................................... 10, 18
    § 108(b)(3)(A) ................................................. 6, 32
    § 108(b)(5) ............................................................ 6
    § 172 ................................................................... 25
    § 172(b)(1)(A) ....................................................... 5
    § 172(b)(1)(I) (1988) ............................................. 33
    § 172(c) ................................................................. 5
    § 172(e) ............................................................... 22
    § 172(j)(1) (1988) ................................................. 20
    § 1017 ................................................................. 31
    § 1501 ............................................................. 6-7, 9
    § 1502 .............................................................. 7, 35
    § 1503(a) .......................................................... 7, 34
    § 1504 .................................................................. 6

**Statutes (cont'd):**                                          **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C) (cont'd):

§ 6110(k)(3) ........................................................................50
§ 6212(a) .............................................................................1
§ 6213(a) .............................................................................2
§ 7442...................................................................................2
§ 7482(a)(1)..........................................................................2
§ 7483...................................................................................2
§ 7701(a)(14) ......................................................................33

American Jobs Creation Act of 2004, Pub. L. No. 108-357,
§ 844(a), 118 Stat. 1418........................................................35

Bankruptcy Tax Act of 1980, Pub. L. No. 96-589,
§ 2, 94 Stat. 3389.................................................................37

**Regulations:**

Temp. Reg. § 1.1502-21T(e) (1998) .........................................22, 48

Treasury Regulations (26 C.F.R.):

§ 1.1502-11(a) ....................................................................27
§ 1.1502-11(a) (1998).........................................22, 29, 36, 48
§ 1.1502-19(g), Ex. 5(c) (1998).............................................50
§ 1.1502-21(b)(2)(iv) ...........................................................26
§ 1.1502-21(f) (1986)............................................................21
§ 1.1502-28(d) .....................................................................53
§ 1.1502-32(b)(5), Ex. 4 (1998) .............................................49
§ 1.1502-79 .....................................................................44-45
§ 1.1502-79(a)(1)(ii) (1990) ..................................................44
§ 1.1502-79(a)(3)..................................................................26
§ 1.1502-79(a)(3) (1986)........................................................26
§ 1.1502-80(a) ......................................................................8

## Miscellaneous:                                    Page(s)

James S. Eustice & Thomas Brantley, *Fed. Income Tax'n of Corporations & Shareholders*, 13.42[1][b] (2016)................29

H.R. Rep. No. 96-833 (1980)..........................................................38

I.R.S. C.C.A. 201033031, 2010 WL 3279819 (Aug. 20, 2010)........36

Don Leatherman, *Are Separate Liability Losses Separate for Consolidated Groups*, 52 Tax Law. 663 (1999)....................23

Deborah L. Paul, *United Dominion: Implications for Attribute Reduction*, 95 Tax Notes 262 (April 8, 2002) ........23

S. Rep. No. 960 (1928), 1939-1 C.B. (Part 2) 409...........................34

S. Rep. No. 96-1035 (1980), *reprinted at* 1980 U.S.C.C.A.N. 7017...............................................5, 38-39

Lee A. Sheppard, *United Dominion: Implications for Attribute Reduction*, 95 Tax Notes 262 (April 8, 2002).......................23

T.D. 9192, 70 Fed. Reg. 14395-01 (March 22, 2005).....................53

# GLOSSARY

| | |
|---|---|
| A. | Joint appendix |
| APA | Administrative Procedure Act |
| Br. | Appellant's opening brief |
| CNOL | Consolidated net operating loss |
| COD | Cancellation of indebtedness |
| I.R.C. or Code | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| MEG | Marvel Entertainment Group, Inc. |
| NOL | Net operating loss |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### No. 15-3335

### MARVEL ENTERTAINMENT, LLC, as Successor to Marvel Entertainment, Inc., f.k.a. Marvel Enterprises, Inc. and as agent for members of Marvel Enterprises, Inc. and Subsidiaries Group,

Petitioner-Appellant

v.

### COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

### ON APPEAL FROM THE DECISION OF
### THE UNITED STATES TAX COURT

### BRIEF FOR THE APPELLEE

### STATEMENT OF JURISDICTION

On March 28, 2013, the Commissioner issued a notice of deficiency

under § 6212(a) of the Internal Revenue Code of 1986 (26 U.S.C.) (the

Code or I.R.C.) to Marvel Entertainment, LLC ("Marvel"), determining

deficiencies in its federal income taxes for the years 2003 and 2004.[1]

(A.18-30.)  On May 30, 2013, Marvel filed a timely petition in the Tax

Court (A.4-17), contesting the Commissioner's determinations.  I.R.C.

§ 6213(a).  The Tax Court had jurisdiction under §§ 6213(a) and 7442.

The Tax Court entered an order and decision on July 21, 2015.

(A.148.)  The decision was final and disposed of all parties' claims.

Marvel filed a timely notice of appeal (A.149) on October 16, 2015.

I.R.C. § 7483.  This Court has jurisdiction under § 7482(a)(1).

## STATEMENT OF THE ISSUE

The Supreme Court has held that the members of an affiliated

group of corporations filing a consolidated income tax return do not

have separate net operating losses unless an applicable regulation so

provides.  Here, Marvel apportioned separate net operating losses to its

consolidated group members before applying § 108(b) of the Code, which

---

[1]  Unless otherwise indicated, all statutory references are to the Code, as amended and in effect at the time in question.

For convenience, we sometimes refer to the affiliated group or its common parent as "Marvel," because although the group reorganized over time, the organizational changes are not relevant to the issue presented here.

requires net operating losses to be reduced by the amount of previously excluded cancellation-of-indebtedness income. No regulation permitted Marvel to apportion the group's consolidated net operating loss for that purpose during the relevant consolidated return year. The question presented is whether the Tax Court correctly rejected Marvel's separate-loss approach and held, instead, that the group's entire consolidated net operating loss, without apportionment, was subject to reduction under § 108(b).

## STATEMENT OF THE CASE

### A.    Procedural history

In a notice of deficiency, the Commissioner increased Marvel's taxable income for 2003 and 2004 to reflect the reduction in a consolidated net operating loss that Marvel had carried forward to those years. (A.18-30.) Marvel brought this suit in the Tax Court, challenging the Commissioner's determinations. (A.4-17.) The parties filed cross-motions for summary judgment. (A.1-2.) In an opinion published at 145 T.C. No. 2 (2015), the Tax Court (Judge Robert P. Ruwe) granted the Commissioner's motion and denied Marvel's motion. (A.112-47.) The court entered an order and decision determining

income tax deficiencies of $2,144,756 for 2003 and $14,453,653 for 2004. (A.148.)

## B. Statutory context

### 1. Section 108(b) of the Code requires net operating losses to be reduced by the amount of cancellation-of-indebtedness income excluded under § 108(a)

This case involves the income tax consequences of the discharge of indebtedness of several members of an affiliated group of corporations filing a consolidated return. As a general rule, when a taxpayer's obligation to repay a debt is discharged for less than the amount due, the taxpayer must recognize the amount of the discharged debt as taxable income. *See* I.R.C. § 61(a)(12) ("gross income" includes "[i]ncome from discharge of indebtedness"); *United States v. Kirby Lumber Co.*, 284 U.S. 1, 3 (1931). The Internal Revenue Code provides several exceptions, however, to that general rule. *See* I.R.C. § 108(a). As relevant here, § 108(a)(1)(A) provides that gross income "does not include" discharged indebtedness if the discharge occurs in a bankruptcy case under Title 11 of the United States Code.

Alhough labelled an "exclusion" from gross income, § 108(a) is best understood as a deferred recognition rule. The provision was "intended to carry out the Congressional intent of deferring, but eventually collecting within a reasonable period, tax on ordinary income realized from debt discharge." S. Rep. No. 96-1035, at 10 (1980), *reprinted at* 1980 U.S.C.C.A.N. 7017, 7025. To accomplish that goal, § 108(b) of the Code requires that certain favorable tax attributes be reduced by the amount of income excluded. As a result, fewer tax attributes will be available to offset income in later years. To that extent, § 108 operates only to defer tax liability, rather than as an absolute exclusion.

Section 108(b)(2) specifies which tax attributes will be reduced and the order of reduction. The first attribute reduced is "[a]ny net operating loss for the taxable year of the discharge, and any net operating loss carryover to such taxable year." I.R.C. § 108(b)(2)(A).[2] In

---

[2] A "net operating loss" generally results from deductions in excess of gross income for a given year, I.R.C. § 172(c), and may be carried back for a period of two years and forward for a period of 20 years, I.R.C. § 172(b)(1)(A).

(continued…)

applying the attribute-reduction requirement of § 108(b), net operating losses "shall" be reduced by "one dollar for each dollar excluded" from gross income under § 108(a).  I.R.C. § 108(b)(3)(A).

### 2.  An overview of consolidated returns

At issue here is how to reduce net operating losses under § 108(b) when the debtor corporation is a member of an affiliated group of corporations filing a consolidated return.  The opportunity to file consolidated federal income tax returns is a "privilege" granted under § 1501 of the Code to affiliated groups of corporations meeting certain qualifications.  I.R.C. § 1501; *see* I.R.C. § 1504.  Consolidated returns are "based upon the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation." *Atl. City Elec. Co. v. Commissioner*, 288 U.S. 152, 154 (1933) (quoting Regs. 45, Art. 631).

---

(…continued)

A taxpayer may elect to apply the reduction first against depreciable property.  I.R.C. § 108(b)(5).  That election is not relevant here.  (*See* A.134 n.7.)

The Code itself does not provide detailed rules for determining the tax liability of affiliated groups filing consolidated returns. Instead, it provides that the tax liability shall be determined in accordance with regulations to be promulgated under a specific grant of rulemaking authority. I.R.C. § 1503(a). Section 1502, in turn, directs the Secretary of the Treasury to prescribe regulations to determine the tax liability of corporations filing consolidated returns. The consolidated return regulations "have the force and effect of law." *Falconwood Corp. v. United States*, 422 F.3d 1339, 1351 (Fed. Cir. 2005) (citing *Union Elec. Co. of Mo. v. United States*, 305 F.2d 850, 854 (Ct. Cl. 1962)); *Nichols v. United States*, 260 F.3d 637, 645 (6th Cir. 2001) (citing *Wolter Constr. Co., Inc. v. Commissioner*, 634 F.2d 1029, 1042 (6th Cir. 1980)).[3] Corporations that file a consolidated return must agree to comply with the consolidated return regulations. I.R.C. § 1501.

---

[3] These decisions recognize that the consolidated return regulations were issued pursuant to a specific grant of legislative authority. In 2011, the Supreme Court held that Treasury Regulations are entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), regardless of whether Congress's delegation of authority was general or specific. *See Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 57 (2011).

It therefore is beyond question that, by filing a consolidated return, the members of an affiliated group of corporations are bound by the consolidated return regulations.  And "[i]t is also well settled that the consolidated return regulations are unique and preempt other provisions of the Internal Revenue Code."  *Grove Equity, Inc. v. Commissioner*, 67 T.C.M. (CCH) 2381, 2382 (1994).  The consolidated return regulations can therefore provide rules for consolidated groups and their members that differ from the rules for stand-alone companies.  *See Wolter Constr.*, 634 F.2d at 1044; *First Chicago Corp. v. Commissioner*, 96 T.C. 421, 439-40 (1991), *aff'd*, 135 F.3d 457 (7th Cir. 1998); *Sooner Fed. Sav. & Loan Ass'n v. United States*, 4 Cl. Ct. 746, 751 (1984).  Conversely, the Code or other law is applicable to the group only "to the extent the regulations do not exclude its application."  Treas. Reg. § 1.1502-80(a).

### C. Marvel group members excluded more than $171 million in cancellation-of-indebtedness income under § 108(a)

In late 1996, Marvel Entertainment Group, Inc. (MEG) and some of its subsidiaries filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code.  (A.8, 34, 68-69.)  At the time of the

bankruptcy filing, MEG and its subsidiaries filed consolidated federal income tax returns as part of an affiliated group of corporations whose common parent was Mafco Holdings, Inc. (A.8, 115.) *See* I.R.C. § 1501. In 1997, MEG and its subsidiaries became a separate affiliated group (the MEG group) that filed consolidated federal income tax returns for the short taxable years ending December 31, 1997, and October 1, 1998. (A.9, 35.) In 1998, as part of a plan of reorganization, Marvel Enterprises, Inc. (then known as Toy Biz, Inc.) acquired MEG and its subsidiaries and became the common parent of a new consolidated group. (A.9, 35.)

In connection with the reorganization, four members of the consolidated group – MEG, Fleer Corp., Heroes World Distribution, Inc., and Malibu Comics Entertainment, Inc. – had debts eliminated and realized a total of more than $171 million in cancellation-of-indebtedness (COD) income, as follows:

| Member | COD Income |
|--------|-----------|
| MEG | $2,497,828 |
| Fleer | 163,680,402 |
| Heroes | 4,930,767 |
| Malibu | 353,466 |
| **Total** | $171,462,463 |

(A.9, 35.)  MEG, Fleer, Heroes, and Malibu each excluded its cancellation-of-indebtedness income from gross income for the short taxable year ending October 1, 1998.  (A.9, 35.)  The parties agree that the exclusion was proper under § 108(a)(1)(A).  (A.124.)

### D.    Marvel limited the reach of § 108(b) by apportioning separate net operating losses to the group members

At the time of the debt forgiveness, the group had a consolidated net operating loss (CNOL) of $187,154,680.  (A.12, 37, 124.)  As we have explained, where (as here) cancellation-of-indebtedness income is excluded under § 108(a)(1), the amount excluded must be applied to reduce tax attributes under § 108(b), starting with a dollar-for-dollar reduction of net operating losses.  *See* I.R.C. § 108(b)(2), (3).  As the

Commissioner applies that rule, the MEG group's $187 million CNOL is reduced by the $171 million in total excluded cancellation-of-indebtedness income.  (A.37.)

But Marvel took a different approach.  Instead of reducing the entire CNOL by $171 million, Marvel first allocated a separate portion of the CNOL to each of MEG, Fleer, Heroes, and Malibu.  (A.13, 37.) Then, Marvel reduced each member's allocated CNOL share separately, as follows:

| Member | Allocated CNOL | Excluded COD Income | Reduction of CNOL | Remaining CNOL |
|---|---|---|---|---|
| MEG | $71,330,567 | $2,497,828 | $2,497,828 | $68,832,739 |
| Fleer | 82,656,671 | 163,680,402 | 82,656,671 | 0 |
| Heroes | 4,058,504 | 4,930,767 | 4,058,504 | 0 |
| Malibu | 2,707,590 | 353,466 | 353,466 | 2,354,124 |
| **Total** | $160,753,332 | $171,462,463 | $89,566,469 | $71,186,863 |

(A.13-14, 38, 117.)[4]

By using that separate-loss approach, the MEG group reduced its $187 million CNOL by only $89.5 million under § 108(b) – even though more than $171 million of COD income had been excluded on the consolidated return under § 108(a). (A.14.) In that manner, Marvel sought to make "permanent" the exclusion for almost half of the $171 million in COD income. (Br. 7, 29, 33-34, 50.) For example, as shown above, although Fleer had excluded $163,680,402 of COD income, Marvel allocated only $82,656,671 of the CNOL to Fleer for reduction. The consolidated group, therefore, after having benefitted from excluding all of the COD income, was left with a substantial CNOL remaining to carry forward to offset the group's income in its 1999 through 2004 tax years. (A.14-16, 118.) As relevant here, Marvel claimed a CNOL carryover of $47,424,026 to its taxable year ending December 31, 2003. (A.15, 118.)

---

[4] The group had a CNOL of $187,154,680, but the record does not explain where the remaining $26,401,348 was allocated. (A.117 n.1.)

### E. The notice of deficiency

The IRS determined that Marvel should have reduced the group's entire CNOL under § 108(b) by the total amount of COD income that the group had excluded under § 108(a). (A.37, 119.) After thus reducing the $187,154,680 CNOL by $171,462,463, a CNOL of only $15,692,217 remained. (A.39.) As relevant here, no CNOL remained to carry forward to 2003. (A.24.) In a notice of deficiency, the IRS therefore disallowed the group's use of the CNOL carryforward to offset its taxable income in 2003 and 2004. (A.18-30.) In consequence, the Marvel group's taxable income increased by $22,477,661 for its 2003 tax year and by $26,409,446 for its 2004 tax year. (A.23.) The IRS determined deficiencies of $2,144,756 for 2003 and $14,453,653 for 2004. (A.18.)

### F. Tax Court proceedings

Marvel filed a petition in the Tax Court (A.4-17), and the parties filed cross-motions for summary judgment (A.1-2). The sole issue was whether Marvel could apportion the group's consolidated net operating loss so that group members could have separate net operating losses subject to reduction under § 108(b). (A.125.) The Commissioner argued

that Marvel could not do so. Instead, the Commissioner argued, Marvel was required to reduce the entire CNOL of the consolidated group, without apportionment. (A.121.) Under this "single-entity approach," the $187 million CNOL is reduced by $171 million, the full amount of excluded COD income. (A.121.) In consequence, no CNOL remained to carry over to Marvel's 2003 or 2004 tax years. (A.121.)

Marvel argued, however, that the loss subject to reduction under § 108(b) was limited by the shares of the group's consolidated net operating loss that it had allocated to each member. (A.121-22.) The parties agreed that if Marvel's "separate-entity approach" was correct, Marvel was not liable for income tax deficiencies for 2003 or 2004. (A.122.) On the other hand, the parties also agreed that if the Commissioner's single-entity approach was correct, Marvel was liable for the additional tax set forth in the notice of deficiency. (A.122-23.)

The Tax Court granted summary judgment to the Commissioner. (A.148.) In its opinion, the court held that the loss subject to reduction under § 108(b) was the Marvel group's entire CNOL, rather than separate portions of the CNOL allocated to the members. (A.132, 146-47.) In reaching that decision, the court relied on *United Dominion*

*Indus., Inc. v. United States*, 532 U.S. 822 (2001). (A.125-32, 146.)
There, the Supreme Court had held that a consolidated group's product
liability loss (which makes up a part of the group's net operating loss)
must be figured on a consolidated, single-entity basis, rather than by
aggregating product liability losses separately determined company by
company. *See United Dominion*, 532 U.S. at 838. A "central
prerequisite" to that holding, the Tax Court explained, was the
Supreme Court's determination that affiliated group members filing a
consolidated return cannot have separate net operating losses where no
regulation specifically so provides. (A.131-32.)

In *United Dominion*, the Tax Court explained, the Supreme Court
rested its holding on the fact that the consolidated return regulations
"provide only one definition of NOL: 'consolidated' NOL." (A.128,
quoting *United Dominion*, 532 U.S. at 829.) Here, as in *United
Dominion*, no applicable regulation allowed the CNOL to be
apportioned in the relevant context. (A.132.) Yet Marvel sought to
apportion its CNOL among the members so that each could have a
separate NOL subject to reduction – even though the Supreme Court
had stated that a "generally applicable concept of a separate NOL in the

consolidated return context 'simply does not exist.'" (A.128-29, quoting *United Dominion,* 532 U.S. at 830.)  The Tax Court therefore rejected Marvel's efforts to narrow *United Dominion*, explaining that the "critical issue" – whether the consolidated return regulations in effect at the time allowed for a separate-entity approach to losses – was "identical" in both cases.  (A.131.)

The Tax Court therefore held that the Commissioner correctly applied § 108(b)(2)(A) in accordance with *United Dominion.*  (A.132, 146.)  The court granted summary judgment to the Commissioner, denied Marvel's cross-motion, and sustained the deficiencies.  (A.148.)

Marvel now appeals.

## SUMMARY OF ARGUMENT

The Tax Court correctly granted summary judgment to the Commissioner.  In *United Dominion Indus., Inc. v. United States*, 532 U.S. 822 (2001), the Supreme Court held that the members of an affiliated group of corporations did not have separate net operating losses during consolidated return years because no applicable regulation authorized such losses.  *Id*. at 838.  Because "the Code and regulations governing affiliated groups of corporations filing

consolidated returns provide only one definition of NOL: 'consolidated' NOL," the Supreme Court agreed with the taxpayer in *United Dominion* "that the concept of separate NOL 'simply does not exist.'" *Id*. at 829-30.

In this case, Marvel apportioned separate net operating losses to its consolidated group members in order to apply § 108(b) of the Code, which requires tax attributes (including net operating losses) to be reduced by the amount of previously excluded cancellation-of-indebtedness income. But no regulation permitted Marvel to apportion the group's consolidated net operating loss for that purpose during the relevant consolidated return year. Marvel's approach therefore runs afoul of the Supreme Court's decision that, where no applicable regulation provides otherwise, a consolidated group's CNOL is unitary in nature and cannot be apportioned. The Tax Court properly rejected Marvel's divide-and-conquer approach.

The Tax Court correctly applied the consolidated return regulations as interpreted by the Supreme Court in *United Dominion*. In its opening brief, Marvel has failed to demonstrate any error in the Tax Court's decision. Marvel's arguments are inconsistent with *United*

*Dominion* and, to the extent raised below, were properly rejected.

Marvel's new arguments on appeal are not preserved and lack merit in any event.

The Tax Court's decision is correct and should be affirmed.

## ARGUMENT

**The Tax Court correctly held that Marvel must reduce the group's entire consolidated net operating loss, without apportionment, by the full amount of excluded cancellation-of-indebtedness income**

### Standard of review

This Court reviews the Tax Court's grant of summary judgment *de novo*.

### A. The Tax Court correctly held that the group's entire consolidated net operating loss was subject to reduction under § 108(b)

#### 1. The Tax Court properly applied the consolidated return rules as interpreted by the Supreme Court in *United Dominion*

The Marvel consolidated group excluded more than $171 million of discharged debt from gross income under the deferred recognition rules of § 108 of the Code. In consequence, the group was required to reduce its $187 million consolidated net operating loss by one dollar for each dollar of income excluded. *See* I.R.C. §§ 108(b)(2)(A), 108(b)(3). But

Marvel reduced its CNOL by only $89.5 million – far less than the $171 million excluded.  To reach that result, Marvel first apportioned the CNOL among the group members and then reduced each portion in isolation.  The group was therefore left with a substantial consolidated net operating loss to carry forward and offset against gross income for the tax years at issue here.

The Tax Court correctly rejected Marvel's separate-loss approach.  Instead, as the court held, Marvel was required to reduce the group's *entire* consolidated net operating loss by the full amount of excluded COD income.  (A.132, 146-47.)  *See* I.R.C. § 108(b)(2)(A).  As the Tax Court explained, the consolidated return regulations did not authorize Marvel to apportion the CNOL among the group members for this purpose.  (A.131.)  And absent applicable regulatory authority, a consolidated group may not apportion its CNOL.  (A.131-32.)  In reaching that decision, the Tax Court properly applied the Supreme Court's holding in *United Dominion Indus., Inc. v. United States*, 532 U.S. 822 (2001).

In *United Dominion*, the Supreme Court considered a question also presented here: whether the members of an affiliated group filing a

consolidated return may have separate net operating losses where no regulation so provides. *Id.* at 829-34. There, the question arose in the context of determining a consolidated group's product liability loss, which is eligible for an extended carry-back period. *Id.* at 824. The Code defined a taxpayer's "product liability loss" as the lesser of its product liability expenses and its net operating loss. *Id.* at 825; I.R.C. § 172(j)(1) (1988). Because there is no product liability loss "until NOL has been determined," the first step in determining a product liability loss, the Supreme Court explained, "requires the calculation of NOL." 532 U.S. at 829.

The parties' positions in *United Dominion* were essentially the reverse of the parties' positions here. In *United Dominion*, the taxpayer applied a single-entity approach, comparing the group's CNOL to the group's total product liability expenses to determine the group's product liability loss. *Id.* at 827. The United States, on the other hand, applied a separate-entity approach, comparing each group member's loss to that member's product liability expenses, and only then aggregating any product liability losses of the members to determine a consolidated amount. *Id.* at 828. The Supreme Court agreed with the taxpayer in

*United Dominion* and held that the single-entity approach was correct. *Id*. at 838.

The Supreme Court reached that holding by rejecting the general notion of separate-entity net operating losses in consolidated return years. As the Court explained, "the Code and regulations governing affiliated groups of corporations filing consolidated returns provide only one definition of NOL: 'consolidated' NOL." *Id*. at 829, citing Treas. Reg. § 1.1502-21(f) (1986). Because "[t]here is no definition of separate NOL for a member of an affiliated group," the Court agreed with the taxpayer that it was "fair to say … that the concept of separate NOL simply does not exist." *Id*. at 830 (internal quotation marks omitted). Instead, the regulations defined net operating loss "exclusively at the consolidated level" during consolidated return years. *Id*. By "expressly and exclusively defining NOL as CNOL," the regulations supported the determination that the group members' product liability expenses must be aggregated and the group's product liability loss determined on a consolidated, single-entity basis. *Id*. at 834.

The same principle applies here. The consolidated return regulations that apply in this case are materially unchanged from those

that applied in *United Dominion*.[5]  Under those regulations, a member's losses and deductions arising during a consolidated return year are included in the entire group's consolidated net operating loss for that year.  *See* Treas. Reg. § 1.1502-11(a) (1998) (consolidated taxable income determined by taking into account each member's separate taxable income and any CNOL deduction); Temp. Reg. § 1.1502-21T(e) (1998) (CNOL occurs when the aggregate of members' deductions exceed their income).  (A.138-39.)  The regulations do not allocate any portion of the CNOL to any group member for its use during consolidated return years.  Instead, the losses that constitute the CNOL for a consolidated return year are carried to other such years only on a consolidated basis and deducted by the group as part of the CNOL deduction.  Each member has the ability to offset its income with net operating losses generated by all members of the group during a consolidated return year.  *See* Treas. Reg. § 1.1502-11(a) (1998).

---

[5]  The law applicable to Marvel's 1998 tax year applies in this case.  (A.123, 138.)  *See* I.R.C. § 172(e).

Therefore, under these regulations, an affiliated group's CNOL is a unitary tax attribute during consolidated return years. But Marvel's application of § 108(b) is premised on the group members having separate NOLs – a concept that the Supreme Court stated "simply does not exist" for a consolidated group member absent express regulatory authority. *United Dominion*, 532 U.S. at 830. Because no regulation permitted Marvel to apportion its CNOL for purposes of I.R.C. § 108(b), Marvel could not do so without running afoul of the Supreme Court's holding. *See* Deborah L. Paul, *United Dominion: Implications for Attribute Reduction*, 95 Tax Notes 262 (April 8, 2002).[6] Under the

_____

[6] Marvel's discussion of the "leading commentators" (Br. 16) is incomplete. *See* Paul, *supra*, 95 Tax Notes at 265 (under the logic of *United Dominion*, "the only net operating loss that is ever available for attribute reduction is the consolidated net operating loss"); Lee A. Sheppard, *Consolidated Returns, the Courts, and Insolvent Subsidiaries*, 94 Tax Notes 808, 811 (Feb. 18, 2002) (under *United Dominion*, "the required reductions of loss carryovers in section 108(b)(2)(A) should be made to the whole group's loss carryovers"). Indeed, even a "leading commentator" (Br. 16) upon whom the Supreme Court relied, 532 U.S. at 830 n.7, observed that "[t]he regulations provide no mechanism for a group or its members to absorb members' losses or deductions separately, instead directing the group as a whole to offset its gross income and deductions in computing its [consolidated taxable income] or CNOL." Don Leatherman, *Are Separate Liability Losses Separate for Consolidated Groups?,* 52 Tax Law. 663, 721 (1999).

-24-

consolidated return regulations, as interpreted by the Supreme Court,

Marvel was required to apply the attribute-reduction rules of § 108(b) to

the entire CNOL, without apportionment.  532 U.S. at 838.  The Tax

Court's holding is therefore correct.

### 2. Marvel has shown no error in the Tax Court's reliance on *United Dominion*

Marvel is wrong to accuse the Tax Court of "over-reading" *United

Dominion*.  (Br. 8, 15, 27 n.15, 37, 49.)  To be sure, described most

restrictively, *United Dominion* "decided how to calculate a group's

[product liability loss]."  (Br. 23.)  But in deciding that question, the

Supreme Court also necessarily decided the question presented here.

The Court explained that "until NOL has been determined, there is no

[product liability loss]."  532 U.S. at 829.  The Supreme Court's holding

was thus reached, and "could only have been reached," by first rejecting

the general notion of separate-entity net operating losses in

consolidated return years.  (A.131.)  Marvel is therefore foreclosed from

seeking a different result here.

As the Tax Court explained, a "central prerequisite" to the holding

in *United Dominion* was a determination "whether separate NOLs exist

for consolidated group members where no specific rule provides for NOL computation on a separate-entity basis." (A.131.) The Supreme Court answered that question in the negative. *See* 532 U.S. at 830. Here, as in *United Dominion*, no "specific rule" provides for separate NOLs. (A.131.) In consequence, the Tax Court properly rejected Marvel's attempt to apportion and reduce its CNOL on a separate-entity basis.

Marvel's contention that *United Dominion* presented "an entirely different issue" from this case (Br. 15) is fundamentally misconceived. As the Tax Court explained, although this case involves § 108(b)(2)(A), rather than § 172, the critical issue – "whether the pre-2003 consolidated return regulations allow for the separate-entity approach" – is "identical" in both cases. (A.131.) Under those regulations, as interpreted by the Supreme Court, a CNOL is a unitary tax attribute that may not be apportioned during a consolidated return year absent express regulatory authority. *See* 532 U.S. at 829. Therefore, the CNOL was the only NOL that was available for the Marvel consolidated group to reduce under § 108(b).

While conceding that *United Dominion* requires it to calculate its CNOL at the consolidated level, Marvel nevertheless contends that the

Supreme Court's decision does not preclude it from apportioning the CNOL among group members for purposes of reducing it under § 108(b). (Br. 19, 22-23.) Marvel is wrong. Under *United Dominion*, a CNOL may *not* be apportioned among the consolidated group members if no applicable rule provides for that apportionment. *See* 532 U.S. at 829-34.

Although Marvel contends that the consolidated return regulations provided "for the apportionment of the CNOL" to group members (Br. 21), Marvel fails to identify the regulation on which it relies – presumably because none applies in this context. Indeed, the Supreme Court criticized the Fourth Circuit for applying an "apportionment" regulation beyond the regulation's intended scope. *See United Dominion*, 532 U.S. at 829-30. There, the Fourth Circuit had relied on Treas. Reg. § 1.1502-79(a)(3) (1986), which provided for the apportionment of a CNOL where a member sought to carry back a loss to a year in which the member was not part of the consolidated group.[7]

---

[7] Treas. Reg. § 1.1502-79(a)(3) is the precursor to Treas. Reg. § 1.1502-21(b)(2)(iv).

*See United Dominion Indus., Inc. v. United States*, 208 F.3d 452, 460 (4th Cir. 2000), *rev'd*, 532 U.S. 822 (2001).

Reversing, the Supreme Court ruled that the Fourth Circuit "applied concepts addressing separate return years to a determination for a consolidated return year, without any statutory or regulatory basis for doing so." *United Dominion*, 532 U.S. at 833. Marvel makes the same mistake here. As the Supreme Court explained, the "facial inapplicability" of the apportionment regulation "only underscores the exclusive concern of § 1.1502-11(a) with consolidated NOL." 532 U.S. at 834. That the consolidated return regulations specifically provide for loss apportionment in limited circumstances – but not this one – supports the Tax Court's decision in this case, rather than Marvel's contrary position.

Marvel is therefore wrong to contend that *United Dominion* "does not stand for the proposition that a group's properly computed CNOL cannot be apportioned among its members." (Br. 23; *see* Br. 22.) To the contrary, under the Supreme Court's holding, a CNOL cannot be apportioned among the members absent express regulatory authority. Here, as in *United Dominion*, no such authority applied. As the

Supreme Court stated, the apportionment regulation "unbakes the cake for only one reason, and that reason has no application here." (A.131, quoting *United Dominion*, 532 U.S. at 833.) Marvel's strained contention that it is instead "slicing the cake" (Br. 23) fails to identify any error in the Tax Court's decision.

Marvel's attempt to dismiss the Supreme Court's holding as a "rejection of the Government's effort to have it both ways" (Br. 22) is puzzling. The Court recognized the Government's authority to create "binding" rules in the consolidated return area, and held that to the extent the Government had exercised that authority, "its actions point to the single-entity approach as the better answer." *United Dominion*, 532 U.S. at 838. But the Court's opinion gives no indication that the result would have been different if the parties' litigating positions had been reversed. And while the Court reaffirmed the Government's authority to amend its regulations to provide for a different outcome, no such amendment changed the outcome for the period at issue here. *Id*.

Marvel misplaces its reliance on the Supreme Court's observation in *United Dominion*, 532 U.S. at 830-31, that the single-entity approach furthered the comparable treatment of stand-alone corporations with

those in affiliated groups filing consolidated returns. (Br. 18-21.) The Tax Court's single-entity approach in this case likewise furthers that comparable treatment. The $171 million of COD income that was excluded went to the benefit of the entire consolidated group. And unlike a stand-alone corporation, which has access to only its own net operating loss, the entire consolidated group has access to the losses incurred by each member of the group. *See* Treas. Reg. § 1.1502-11(a) (1998). (A.136.) Here, after separately apportioning the CNOL in a manner that increased the amount of losses available for carryover, Marvel then carried those losses forward for the benefit of the entire group. (A.14-16.) The sharing of attributes is often regarded as the most attractive feature of the consolidated return regulations, because one group member's net operating losses can be used to offset another member's taxable income. *See* James S. Eustice & Thomas Brantley, *Fed. Income Tax'n of Corporations & Shareholders*, ¶ 13.42[1][b] (2016). Under the Tax Court's decision, § 108(b)(2)(A) applies to the losses available to each member corporation: the entire CNOL in this context. The Tax Court's decision therefore gives full effect to the Supreme Court's decision in *United Dominion*.

The Tax Court applied § 108(b) consistently with the Code, the consolidated return regulations, and the Supreme Court's holding in *United Dominion*. For the period at issue here, no regulation apportioned the CNOL to a group member for purposes of reducing net operating losses under § 108(b)(2)(A) during a consolidated return year. And the Supreme Court has held that a CNOL may not be apportioned where, as here, no consolidated return rule expressly so provides. *See United Dominion*, 532 U.S. at 834. Marvel has shown no error in the Tax Court's decision.

## B. Marvel's remaining arguments lack merit

### 1. The Tax Court correctly rejected Marvel's construction of § 108

If this Court agrees with the Tax Court that *United Dominion* is dispositive (A.132; *see* Argument A, *supra*), then that will end the matter. In a series of scattershot arguments, Marvel tries, but fails, to demonstrate any error in the Tax Court's decision. (Br. 29-49.) To the extent Marvel raised its arguments below, the Tax Court properly

rejected them. Marvel did not preserve its remaining arguments for appeal. In any event, all of Marvel's arguments lack merit.[8]

Marvel first contends that the Tax Court's decision contravenes the plain language of § 108 of the Code. (Br. 24-29.) The Tax Court correctly rejected that contention. (A.132-36.) Section 108(a) provides that gross income shall not include any amount otherwise includible in gross income "by reason of the discharge (in whole or in part) of indebtedness of the taxpayer" if the discharge occurs in a title 11 case. I.R.C. § 108(a)(1)(A). Section 108(b), in turn, requires that the amount so excluded "shall be applied to reduce the tax attributes of the taxpayer[.]" I.R.C. § 108(b)(1). The attribute reduction starts with "[a]ny net operating loss for the taxable year of the discharge, and any net operating loss carryover to such taxable year." I.R.C. § 108(b)(2)(A).

---

[8] In its opening brief, Marvel does not challenge the Tax Court's rulings regarding I.R.C. § 1017 or *Temple-Inland Inc. v. United States,* 68 Fed. Cl. 561 (2005); nor does Marvel renew any argument regarding those issues. (*See* A.137-38, 141-42.) Marvel has therefore waived any such argument. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,* 412 F.3d 418, 428 (2d Cir. 2005) (arguments not made in appellant's opening brief are waived).

Net operating losses "shall" be reduced by "one dollar for each dollar excluded" from gross income under § 108(a).  I.R.C. § 108(b)(3)(A).

The plain language of § 108 supports the Tax Court's decision in this case, not Marvel's contrary position.  As the court explained, "[a] consolidated group's CNOL is a favorable tax attribute that consolidated group members share."  (A.136.)  Because the CNOL is a group attribute, the Marvel group's CNOL is necessarily the "net operating loss for the taxable year of the discharge" in this case.  I.R.C. § 108(b)(2)(A).  A group member does not have a separate net operating loss for the "taxable year of the discharge" where, as here, that year is a consolidated return year.  *Id.*

Marvel's position also conflicts with the statutory requirement that net operating losses "shall" be reduced by "one dollar for each dollar excluded" from gross income under § 108(a).  I.R.C. § 108(b)(3)(A).  Marvel seeks to reduce its CNOL by only $89.5 million, even though the group members excluded more than $171 million in cancellation-of-indebtedness income under §108(a).  The Tax Court properly rejected Marvel's approach as inconsistent with § 108.  (A.132-37.)

Marvel nevertheless contends that the word "taxpayer" in § 108 compels the conclusion that "[t]he attributes to be reduced under section 108(b) are only those attributes of the corporations whose debts were discharged." (Br. 28; *see* Br. 6, 14, 24-29, 48.) But that contention ignores the rule that the CNOL is an attribute shared by the member corporations. Marvel's reliance on the definition of "taxpayer" in § 7701(a)(14) (Br. 6, 26) is misplaced for the same reason. Indeed, the statute at issue in *United Dominion* was, on its face, a provision that applied to "a taxpayer." *See* I.R.C. § 172(b)(1)(I) (1988) (providing a 10-year carryback "[i]n the case of a taxpayer which has a product liability loss"). The Supreme Court nevertheless held that the CNOL could not be apportioned.[9] *See* 532 U.S. at 838.

The Code's general definition of a "taxpayer" is therefore entirely beside the point. The question in this case is *not* who is a taxpayer, but,

---

[9] In *United Dominion*, the United States made the same argument that Marvel advances here – that the term "taxpayer" in the Code refers to each separate member of an affiliated group. (Brief for the United States, No. 00-157 (S. Ct.), *reprinted at* 2001 WL 125814, at 30-32.) Although the majority opinion did not address that point, it necessarily rejected the contention.

instead, what is a taxpayer's net operating loss in the consolidated return context. (*See* A.145.) As we have explained, that net operating loss is the CNOL under the consolidated return regulations as interpreted by the Supreme Court.

Marvel's "taxpayer" argument also ignores the Congressional delegation of authority to the Secretary to provide rules for affiliated groups of corporations filing consolidated returns. As the Tax Court observed, § 108 "appears to have been written in contemplation of stand-alone entities." (A.134.) But that unsurprising proposition does not support Marvel's claims.

As we have explained, the Code itself does not provide rules for determining the tax liability of affiliated groups filing consolidated returns. (*See* pp. 6-8, *supra*.) Instead, Congress delegated rulemaking authority to the Secretary, believing it "impracticable to attempt by legislation to prescribe the various detailed and complicated rules necessary to meet the many differing and complicated situations" arising in the consolidated return context. S. Rep. No. 960, at 15 (1928), 1939-1 C.B. (Part 2) 409, 419; *see* I.R.C. § 1503(a). When Congress enacted § 108, it is presumed to have been aware of existing law,

including its express delegation of authority to the Secretary in the consolidated return area. *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998) ("[W]e assume that Congress is aware of existing law when it passes legislation.") (citation omitted); *Citizens Against Casino Gambling in Erie County v. Chaudhuri*, 802 F.3d 267, 287 (2d Cir. 2015) (Congress presumed familiar with regulatory definition of terms).

Because of this broad delegation of authority, the rules for consolidated groups are contained almost entirely in the regulations. *Wolter Constr.*, 634 F.2d at 1032. And those regulations frequently impose different rules from those governing corporations not filing a consolidated return.[10] That is the case here. While a stand-alone entity generally computes its net operating loss on a stand-alone basis, a member of a consolidated group does not. (A.134, 136.) *See* Argument

---

[10] In 2004, Congress reaffirmed the Secretary's authority to promulgate rules for consolidated groups that differ from the rules applicable to separate companies when it amended I.R.C. § 1502 to add a sentence providing that "the Secretary may prescribe rules that are different from the provisions of chapter 1 that would apply if such corporations filed separate returns." American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 844(a), 118 Stat. 1418, 1600.

A.1, *supra*; Treas. Reg. § 1.1502-11(a) (1998).  Marvel's "taxpayer"

argument therefore asks too much of a single word.

Marvel erroneously relies on an IRS written determination where,

Marvel states, "in connection with this very controversy … the IRS

Office of Chief Counsel conceded that 'the reference to "the taxpayer" in

section 108(b)(1) refers to the consolidated group *member* with excluded

COD income … rather than the entire group.'"  (Br. 24, citing I.R.S.

C.C.A. 201033031, at 2, 2010 WL 3279819 (Aug. 20, 2010); *see* Br. 48.)

But whether a group member is a "taxpayer" matters not because, as

we have explained, the members did not have separate "net operating

loss[es] for the taxable year of the discharge" in this case.  I.R.C.

§ 108(b)(2)(A).  And as we have also explained, the rules governing the

CNOL are contained in the consolidated return regulations.  In any

event, to the extent Marvel relies on the IRS's position, we note that the

Chief Counsel concluded, in the same document Marvel cites, that "the

CNOL is the NOL subject to reduction under section 108(b)(2)(A) and

the consolidated return regulations when a member of a consolidated

group realizes excluded COD income."  I.R.S. C.C.A. 201033031, at 18.

Marvel has therefore shown no inconsistency in the Commissioner's position.

For all of these reasons, the word "taxpayer" in § 108 provides no support for Marvel's position that it may apportion separate net operating losses to the consolidated group members before applying § 108(b).

### 2. Marvel misplaces its reliance on a selective reading of the legislative history

Having found no support for its position in the Code, the regulations, or Supreme Court precedent, Marvel searches the legislative history of § 108 to buttress its position. (Br. 29-34.) Marvel's efforts are unavailing. As the Tax Court explained, applying a single-entity approach in this case is consistent with the purpose of § 108, as shown by the legislative history. (A.135-36.) In contending otherwise, Marvel – rather than the Tax Court – reads the legislative history of § 108 "selectively." (Br. 30-31.)

Section 108 of the Code was enacted as part of the Bankruptcy Tax Act of 1980, Pub. L. No. 96-589, § 2, 94 Stat. 3389 (the Act), to provide tax rules for debt discharge in cases of bankrupt or insolvent

debtors.  The Act revised and updated the tax provisions applicable to taxpayers in bankruptcy, in light of bankruptcy law changes that had gone into effect in 1979.  The Act was intended to strike a balance between bankruptcy policy and tax policy.  *See* H.R. Rep. No. 96-833, at 8-9 (1980).

Marvel places far too much weight on a reference in a committee report to preserving a debtor's "fresh start" after bankruptcy.  (Br. 2, 11, 29, 30, 33.)  *See* S. Rep. No. 96-1035, at 10.  As the same report makes clear, § 108 preserved that "fresh start" *not* by an outright exclusion, but instead, by a "deferral of ordinary income on debt discharge."  *Id.* (heading).  To accomplish that deferral, the Act imposed no immediate tax on the COD income of a corporation in bankruptcy, but, in exchange, the discharge amount would be "applied to reduce the taxpayer's net operating losses and certain other tax attributes[.]"  *Id.* at 10-11.  That attribute reduction was "intended to carry out *the Congressional intent of deferring, but eventually collecting within a reasonable period*, tax on ordinary income realized from debt discharge."  *Id.* at 10 (emphasis added); *see* H.R. Rep. No. 96-833, at 9.

Under Marvel's construction of § 108, however, the "tax on ordinary income realized from debt discharge" is not "eventually collect[ed] within a reasonable period." S. Rep. No. 96-1035, at 10. Instead, Marvel seeks to permanently exclude more than half of its group members' COD income, even though the group's CNOL exceeded the full COD amount. Marvel has therefore advanced precisely the sort of "results-oriented" analysis that it erroneously ascribes to the Tax Court (Br. 33) – and the result that Marvel seeks is contrary to the result that Congress intended.

Marvel fails to reconcile its position with the Congressional intent. To be sure, if all of the tax attributes listed in § 108(b)(2) are exhausted, the exclusion for any remaining COD income becomes "permanent." (Br. 4, 7, 29, 32-34, 50.) But any such permanent exclusion arises only *after* net operating losses and the other specified tax attributes are exhausted. *See* § 108(b)(2); S. Rep. No. 96-1035, at 10-11. A permanent exclusion is therefore the last resort, not the general rule. Here, by contrast, Marvel seeks to permanently exclude a large portion of the group's COD income *without* exhausting the group's consolidated net

operating loss.  The legislative history provides no support for the

windfall that Marvel seeks.

> **3.    Marvel has not preserved its new *Prudential Lines* argument, which lacks merit in any event**

> **a.    This Court should not consider Marvel's new *Prudential Lines* argument**

For the first time on appeal, Marvel contends that this case is

controlled by *In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir. 1991),

which held, according to Marvel, that "each bankrupt member of a

consolidated group owns the portion of a CNOL attributable to its

operations[.]"  (Br. 34.)  But in faulting the Tax Court for failing to

"address" *Prudential Lines* (Br. 34), Marvel wholly ignores its own

failure to bring that case to the court's attention.  Marvel filed two

briefs in the Tax Court: an 87-page principal brief, and a 37-page reply

brief.  (A.2.)  Marvel's only reference to *Prudential Lines* was in footnote

26 of its reply brief – as a citation preceded by the signal "*cf.*"[11]  (Doc. 23

at 19 n.26.)  And although Marvel describes several other Circuits'

---

[11]  Footnote 26 of Marvel's reply brief read as follows: "*Cf. In re: Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir. 1991) (holding that the portion of a CNOL attributable to a member was property of that member's bankruptcy estate)."

opinions as "consistent with" *Prudential Lines*, Marvel cited *none* of those cases below, even though they were decided between 1973 and 2014 – well before the Tax Court issued its opinion in this case in July 2015. (Br. 36-37; *see* A.112.) In short, Marvel did not argue below that under the law of this Circuit each member of a consolidated group owns its portion of the CNOL.

This Court has often applied the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Mhany Mgmt., Inc., v. County of Nassau*, __ F.3d __, 2016 WL 1128424, at *28 (2d Cir. March 23, 2016) (citation omitted). In that regard, this Court has held that an appellant does not preserve for appellate review an issue that was relegated to a footnote in a brief below. *See Caiola v. Citibank, N.A.*, 295 F.3d 312, 328 (2d Cir. 2002); *Suncal Communities I LLC v. Lehman Commercial Paper, Inc.*, 402 Fed. Appx. 634, 636 n.1 (2d Cir. 2010); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005); *Central States, Southeast & Southwest Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 n.2 (7th Cir. 2012); *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1002 (6th Cir. 1994). Marvel's cursory

citation of *Prudential Lines* in a footnote in its reply brief below did not preserve the argument that it seeks to present here.

Although this Court may consider new arguments on appeal "where necessary to avoid a manifest injustice or where the argument presents a question of law," the Court does not favor new arguments on appeal "where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *Mhany Mgmt.*, 2016 WL 1128424 at *28, quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008). In the Tax Court, Marvel had ample opportunity to develop an argument regarding *Prudential Lines* and any other "consistent" cases. (Br. 36.) On appeal, Marvel offers no explanation for its failure to do so. *See Mhany Mgmt.*, 2016 WL 1128424 at *28, quoting *Nortel*, 539 F.3d at 133.

Marvel is poorly positioned to assign error to the Tax Court for failing to address an argument that was never presented there. (Br. 34-38.) *See Wal-Mart Stores*, 396 F.3d at 124 n.29; *Caiola*, 295 F.3d at 328; *Suncal*, 402 Fed. Appx. at 636 n.1. In the Tax Court, Marvel took the position that *Prudential Lines* warranted only the most passing of references, and that the other Circuits' decisions warranted no

reference at all. By failing to advance its *Prudential Lines* argument in the Tax Court, Marvel has waived it.

### b. Marvel's new argument, if considered, should be rejected

1. Even if this Court were to conclude that considering Marvel's new argument is "necessary to avoid a manifest injustice," the decision does not support Marvel's contentions in this case. *Mhany Mgmt.*, 2016 WL 1128424 at *28. *Prudential Lines* did not address § 108 of the Code. Instead, the case involved whether, after confirmation of a subsidiary's reorganization plan, the parent could claim a worthless-stock deduction for a prior year with respect to its stock in the subsidiary. *See Prudential Lines*, 928 F.2d at 567-68. The worthless-stock deduction would have eliminated the subsidiary's NOL carryovers to future years. *Id*. at 567, 574. Resting its decision on bankruptcy law, this Court held that the worthless-stock deduction was barred by the automatic stay imposed by § 362(a)(3) of Title 11 of the U.S. Code, because the deduction would have deprived the debtor-subsidiary of the right to

claim the NOL in a post-bankruptcy, separate-return year.[12] *See* 928 F.2d at 574.

Contrary to Marvel's suggestion, *Prudential Lines* can be harmonized with *United Dominion*'s holding that, in the absence of a regulation, no portion of a CNOL can be apportioned to an individual group member. As this Court recognized in *Prudential Lines*, the confirmation of the reorganization plan in that bankruptcy case "will cause PLI's departure from the group." 928 F.2d at 570. The Court went on to rely upon Treas. Reg. § 1.1502-79(a)(1)(ii) (1990) for the proposition that "upon deconsolidation any remaining NOL attributable to a corporation is available to offset income on its separate tax returns." *Id.* at 571. In *United Dominion*, the Supreme Court rejected the notion that because the § 1.1502-79 regulations provide for apportioning a CNOL to a member's "separate return years," it follows that a similar apportionment can be made in other instances. 532 U.S. at 833. It was in that context that the Supreme Court said that the § 1.1502-79 regulations "unbake[ ] the cake for only one reason, and

---

[12] The United States was not a party to *Prudential Lines*.

that reason has no application here." *Id*. The teaching of *Prudential Lines* is that because the debtor would no longer be a member of the consolidated group when it emerged from bankruptcy, it should be able to carry with it that portion of the group's CNOL apportioned to it under the § 1.1502-79 regulation.

2. Marvel's reliance on *Prudential Lines* is misplaced for an additional reason. This Court decided *Prudential Lines* in 1991, ten years before the Supreme Court decided *United Dominion*. There, the Supreme Court held that affiliated group members did not have separate NOLs during a consolidated return year, and that absent an applicable apportionment rule, the concept of such a separate NOL "simply does not exist." *United Dominion*, 532 U.S. at 830. *See* Argument A, *supra*.

To the extent *Prudential Lines* could be read to suggest otherwise, the decision has been effectively overruled by *United Dominion*. *See In re Marvel Entertainment Group, Inc.*, 273 B.R. 58, 84-85 (D. Del. 2002) (citing *United Dominion* to conclude that "the individual members of the Mafco consolidated group did not possess separate tax attributes

such as NOLs.").[13]  This Court is not bound by a prior panel's decision "whose rationale is overruled, implicitly or expressly, by the Supreme Court."  *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 172 (2d Cir. 2001) (citation omitted).  Therefore, to the extent that it supports Marvel's argument here, *Prudential Lines* would no longer be "the law of this Circuit" (Br. 34) in that regard.

---

[13]  The issue in the *Marvel Entertainment Group* bankruptcy case concerned $147 million of NOLs that Marvel had incurred through the end of its short tax year ending on April 24, 1997, the last date on which it was a part of the Mafco consolidated group.  The Mafco group had included, and benefitted from, those NOLs on its consolidated tax returns for taxable periods ending through April 24, 1997.  Marvel claimed that Mafco should compensate it for the use of those NOLs because (among other reasons) that use constituted a transfer of Marvel's property that is avoidable under the Bankruptcy Code.  273 B.R. at 70.  The bankruptcy court rejected that argument on the ground that Mafco was required by federal law to take Marvel's pre-April 24, 1997 NOLs into account on its consolidated returns.  *Id*. at 84.   In support of that conclusion, the court reasoned (consistent with *United Dominion)* that "the individual members of the Mafco consolidated group did not possess separate tax attributes such as NOLs."  *Id*. at 84-85.

In the present case, Marvel seeks to apply § 108 as though its four debtor-members had stand-alone NOLs, even though no regulation apportioned the group's CNOL for that purpose.  That result would be inconsistent with *United Dominion*, which held that the members of a consolidated group have no separate NOLs.

For all of these reasons, Marvel made a better choice below when it decided not to advance any argument regarding *Prudential Lines*. *See* Argument B.3.a, *supra*.

3.  Marvel's new argument that other courts' decisions are "consistent with" *Prudential Lines* (Br. 36) is even more attenuated. Those decisions addressed neither § 108 nor loss carryforwards. Instead, they involved an entirely different issue: the ownership of carryback refunds paid by the IRS arising from a bankrupt subsidiary's losses.  (Br. 36-37.)  *See In re Bob Richards Chrysler-Plymouth Corp., Inc.*, 473 F.2d 262, 264-65 (9th Cir. 1973); *Capital Bankshares, Inc. v. FDIC*, 957 F.2d 203, 208 (5th Cir. 1992).  Under *United Dominion*, the rationale of those decisions cannot be extended to support a general notion of separate net operating losses during consolidated return years.  The remaining decisions Marvel cites (Br. 37-38) involved the disposition of tax refunds under the terms of contractual agreements, and therefore have no conceivable relevance to the question at hand. *See In re Indymac Bancorp, Inc.* 554 Fed. Appx. 668, 670 (9th Cir. 2014); *In re NetBank, Inc.*, 729 F.3d 1344, 1349-52 (11th Cir. 2013); *In re Cmty. Bancorp*, 2013 WL 4441925, at *14-15 (9th Cir. 2013).

None of the decisions Marvel cites support its apportionment of the group's consolidated net operating loss for purposes of applying the attribute-reduction rules of § 108(b). And even if those decisions supported Marvel's position here, they would not be good law in that regard under *United Dominion*. In consequence, the potential "Circuit split" that Marvel predicts (Br. 38) is wholly illusory.

### 4. The consolidated return regulations support the Tax Court's decision in this case, not Marvel's contrary position

Marvel's contention that the consolidated return regulations in effect in 1998 "universally support" its position (Br. 39) is meritless. As Marvel admits elsewhere, "[a]t the time of the events at issue, Treasury had not promulgated any regulations specifically addressing the application of section 108 to members of a consolidated group." (Br. 41; *see* Br. 47; A.10.) And, as we have explained, none of the regulations controlling the construction, definition, and allocation of the CNOL permitted the CNOL to be apportioned for purposes of § 108. Instead, the regulations defined the CNOL as a group attribute. *See* Argument A.1, *supra*; *United Dominion*, 532 U.S. at 830; Treas. Reg. § 1.1502-11(a) (1998); Temp. Reg. § 1.1502-21T(e) (1998).

Faced with that adverse authority, Marvel instead relies on two illustrative regulatory examples which, it concedes, were "addressing other consolidated return rules." (Br. 39.) According to Marvel, those examples "assumed" that § 108 should be applied in the way that it prefers here. (Br. 39.) Marvel's argument has two fundamental flaws.

First, examples that illustrated "other consolidated return rules" (Br. 39) cannot override the text of the regulations governing consolidated net operating losses, or the Supreme Court's interpretation of those regulations. Marvel relies on examples that illustrated the rules for investment basis adjustment and excess loss accounts, matters that have no bearing on the question presented here. Even if Marvel were correct that those examples assumed some form of apportionment, any such assumption would not extend to the different context presented by this case. *See United Dominion*, 532 U.S. at 833-34 (rejecting application of apportionment regulation outside its specific context).

Second, even if extraneous examples were considered, they do not justify Marvel's reliance. Although Treas. Reg. § 1.1502-32(b)(5), Ex. 4 (1998), referred to reducing a subsidiary's NOL, the example does not

make clear whether any other member of the group had net operating losses. It therefore does not support Marvel's contentions. And Marvel fails to explain how an example illustrating the excess loss account rules, Treas. Reg. § 1.1502-19(g), Ex. 5(c) (1998), has any bearing on the question presented here. (Br. 40.) The examples illustrating "other consolidated return rules" (Br. 39) therefore do not help Marvel's cause.

Proceeding even further afield, Marvel relies on selected private letter rulings that the IRS issued to other taxpayers during the 1990s. (Br. 40-41). But as Marvel admits, such determinations may not be used or cited as precedent. (Br. 41.) *See* I.R.C. § 6110(k)(3); *Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 12 (2001). Nor does the "IRS's administrative practice" (Br. 41) have any relevance in this case. In any event, to the extent that IRS "practice" may have differed prior to the *United Dominion* decision, that difference should not be surprising. (*See* A.146.) The Government had argued in favor of a separate-entity approach in *United Dominion* – as Marvel does now. *See* 532 U.S. at 828. The Supreme Court rejected that approach in 2001. Marvel should heed the Supreme Court's teachings.

### 5. Marvel has not preserved its baseless APA argument

#### a. This Court should not consider Marvel's new APA argument

Marvel contends that the Tax Court's decision in this case violates the Administrative Procedure Act (APA) by "impermissibly allow[ing] the Government to create binding consolidated return rules through litigation[.]" (Br. 42; *see* Br. 45.) But Marvel did not try to persuade the Tax Court that ruling for the Commissioner in this case would violate the APA. To the contrary, Marvel did not even mention the APA in its petition or its briefs below. On appeal, Marvel has neither alleged nor shown that considering its new APA argument is is "necessary to avoid a manifest injustice." *Mhany Mgmt.*, 2016 WL 1128424 at *28; *see* Argument B.3.a, *supra*. Accordingly, this Court should not consider Marvel's new APA argument for the first time on appeal.

#### b. Marvel's new APA argument is baseless

Even if this Court were to consider it, Marvel's belated APA argument is meritless. Marvel cites no authority for the proposition that a court engages in "an impermissible exercise of legislative rulemaking" (Br. 49) when it construes applicable Treasury regulations

or applies Supreme Court precedent.  To the contrary, the Tax Court, and this Court, have construed regulations or applied Supreme Court precedent in cases too numerous to list.

The Tax Court properly applied the law to the facts of this case. The Tax Court is a "court[ ] of the United States" and not an "agency" under the APA, 5 U.S.C. § 551.  *See Freytag v. Commissioner*, 501 U.S. 868, 891 (1991); *Megibow v. Clerk of the U.S. Tax Court*, 2004 WL 1961591, at *4-5 (S.D.N.Y. 2004), *aff'd*, 432 F.3d 387 (2d Cir. 2005). The Tax Court's decisions are therefore not subject to "notice and comment."  (Br. 44; *see* Br. 49.)  *Cf. Ax v. Commissioner*, 146 T.C. No. 10, 2016 WL 1446066, at *5-7 (Apr. 11, 2016) (Tax Court does not violate APA in looking beyond notice of deficiency).  Indeed, if Marvel's logic had merit, the Tax Court would "effectively allow[ ] the Government to create new binding rules retroactively" (Br. 45) whenever the court rejects a taxpayer's interpretation of a Treasury regulation.  Obviously, that is not the law.

To the extent Marvel contends that the Commissioner (rather than the Tax Court) violated the APA, that contention is equally meritless.  The Secretary issued temporary regulations in 2003 that

directly addressed the application of I.R.C. § 108 to consolidated groups and their members. Finalized in 2005, those regulations adopt a hybrid approach that includes an apportionment of the CNOL to individual debtor-members, reducing the debtor member's apportioned CNOL first, but still looking to the entire CNOL when the debtor-member's attributes prove insufficient.[14] *See* Treas. Reg. § 1.1502-28(d); T.D. 9192, 70 Fed. Reg. 14395-01 (March 22, 2005).

But the Commissioner did not ask the Tax Court to apply the new regulations "retroactively" (Br. 41, 45-46) in this case; nor did the Tax Court do so. Instead, the court rested its decision on "the pre-2003 consolidated return regulations," as interpreted by the Supreme Court in *United Dominion.* (A.131, 140; *see* Doc. 10 at 12 n.4.) Marvel has not challenged the notice-and-comment procedures for those regulations. The Supreme Court's decisions are given full retroactive effect, as the

---

[14] Contrary to Marvel's contention, the Tax Court did not hold that the approach adopted by the new regulations "cannot be done." (Br. 9 n.10.) Instead, the court held that separate NOLs cannot be allocated to group members "where no specific rule provides authority" to do so. (A.131; *see* A.140.) And it is a normal part of the rulemaking process to make "conforming changes" to prevent so-called "distortions" that may arise regardless of the rule chosen. (Br. 21-22.)

Tax Court explained (A.145), and as Marvel does not dispute. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). *United Dominion* therefore applies with full force to Marvel's 1998 tax year. As the Tax Court held, Marvel's approach is "contrary to the rule in the consolidated return regulations as interpreted by the Supreme Court in *United Dominion*." (A.145.)

It is unclear why Marvel contends, in this context, that ambiguous Code provisions should be construed against the Government. (Br. 42.) In any event, that contention fails for three reasons. First, as the Supreme Court has explained:

> We are not impressed by the argument that, as the question here decided is doubtful, all doubts should be resolved in favor of the taxpayer. It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be.

*White v. United States*, 305 U.S. 281, 292 (1938). Second, deductions and exclusions from income (such as Marvel seeks here) are narrowly construed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer seeking an exclusion from income bears the burden of proving that its claim falls within an exclusionary provision of the Code. *Taggi v. United States*, 35 F.3d 93, 95 (2d Cir. 1994). Third, Marvel challenges the Commissioner's deficiency determinations. (A.4-30.) "It is well established that the Commissioner's determination of a deficiency is presumptively correct and the taxpayer has the burden of showing it incorrect." *Albino v. Commissioner*, 273 F.2d 450, 451 (2d Cir. 1960). Marvel has not met that burden here.

As a fallback argument, Marvel contends that its position was reasonable under *Gottesman & Co., Inc. v. Commissioner*, 77 T.C. 1149 (1981). (Br. 26-27, 43-44.) But, as the Tax Court explained here, the regulations at issue in *Gottesman* were ambiguous, and the Supreme Court had not spoken to the question. (A.144.) The *Gottesman* court also went out of its way to "emphasi[ze] that the accumulated earnings tax" at issue there was "a penalty tax, and as such is to be strictly construed." 77 T.C. at 1156. This case, by contrast, does not involve

such a tax; Marvel does not contend that the CNOL regulations are ambiguous; and no such ambiguity exists in any event. The applicable regulations, as interpreted by the Supreme Court, "mandate" (Br. 27) that the Marvel group's CNOL was a unitary attribute for the period at issue here. *See United Dominion*, 532 U.S. at 830-31. In any event, this Court is not bound by *Gottesman* and, to our knowledge, has never cited it in an opinion.

Accordingly, this Court should decline the invitation to defer to Marvel's purportedly "reasonable position" regarding the consolidated return rules. (Br. 43.) As the Tax Court explained, when Marvel apportioned separate net operating losses to group members without regulatory permission, it adopted an approach "specifically rejected" in *United Dominion*. (A.146.) In any event, to the extent there is any doubt about how the consolidated return regulations should be construed, the Commissioner's interpretation of those regulations, not Marvel's interpretation, is controlling. *See Auer v. Robbins,* 519 U.S. 452, 462 (1997); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

Marvel's position in this case is contrary to the consolidated return regulations as construed by the Supreme Court in *United Dominion*. The Tax Court correctly held that Marvel's entire consolidated net operating loss is subject to reduction under § 108(b). Marvel has demonstrated no error in the court's decision.

## CONCLUSION

The decision of the Tax Court is correct and should be affirmed.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

/s/ Deborah K. Snyder

GILBERT S. ROTHENBERG    (202) 514-3361
THOMAS J. CLARK          (202) 514-9084
DEBORAH K. SNYDER        (202) 305-1680
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

APRIL 2016

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements, and
Type-Style Requirements


1.  This brief complies with the type-volume limitation of Fed. R.
App. P. 32(a)(7)(B) because:

[ X]   this brief contains 10,750 words, excluding the parts of the
       brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [*state the
       number of*] lines of text, excluding the parts of the brief
       exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R.
App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.
32(a)(6) because:

[ X]   this brief has been prepared in a proportionally spaced
       typeface using Microsoft Word 2010 in Century Schoolbook
       14, or

[ ]    this brief has been prepared in a monospaced typeface using
       [*state name and version of word processing program*] with
       [*state number of characters per inch and name of type style*].


     /s/ Deborah K. Snyder
       DEBORAH K. SNYDER
         *Attorney*

April 29, 2016

# CERTIFICATE OF SERVICE

It is hereby certified that, on this 29th day of April, 2016, (1) six paper copies of this brief were mailed to the Court, and (2) I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system.  Counsel for the appellant are registered CM/ECF users and will be served by the CM/ECF system.


   /s/ Deborah K. Snyder          _
                DEBORAH K. SNYDER
                *Attorney*