# 15-3335-ag

# United States Court of Appeals
## *for the*
# Second Circuit

MARVEL ENTERTAINMENT, LLC, as Successor to Marvel Entertainment, Inc., f.k.a. Marvel Enterprises, Inc. and as agent for members of Marvel Enterprises, Inc. and Subsidiaries Group,

*Petitioner-Appellant,*

— v. —

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES TAX COURT,
NO. 12113-13 (RUWE, J.)

# REPLY BRIEF FOR PETITIONER-APPELLANT

B. JOHN WILLIAMS, JR.
DAVID W. FOSTER
NATHAN P. WACKER
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000

SONJA S. SCHILLER
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
(312) 407-0700

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. ii

**INTRODUCTION** .............................................................................................. 1

**ARGUMENT** ..................................................................................................... 7

    I.     The consolidated return regulations in effect in 1998 support
          Marvel's position ....................................................................... 8

    II.    The Government does not dispute that the "taxpayer" for
          purposes of section 108 is the taxpayer-member, not the group ......... 12

    III.   Unlike the position rejected in *United Dominion*, Marvel's
          position has regulatory and statutory support. ................................... 16

    IV.   Under *Prudential Lines* and similar cases, the members of
          Marvel's consolidated group owned the portion of the CNOL
          attributable to their activities ............................................................. 22

    V.    The legislative history of section 108 does not justify the
          Government's position in this case. .................................................... 27

    VI.   The Government seeks to use litigation to skirt the APA's
          notice and comment requirements ....................................................... 28

**CONCLUSION** ................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

*Eastman Kodak Co. v. STWB, Inc.*,
452 F.3d 215 (2d Cir. 2006) ........................................................................23

*Gottesman & Co. v. Commissioner*,
77 T.C. 1149 (1981)..................................................................................3

*In re Majestic Star Casino, LLC*,
716 F.3d 736 (3d Cir. 2013) ......................................................................26

*In re Marvel Entertainment Group, Inc.*,
273 B.R. 58 (D. Del. 2002)........................................................................26

*In re Prudential Lines Inc.*,
928 F.2d 565 (2d Cir. 1991) ................................................8, 22, 23, 24, 25

*Rite Aid Corp. v. United States*,
255 F.3d 1357 (Fed. Cir. 2001) ................................................................3

*United Dominion Industries, Inc. v. United States*,
532 U.S. 822 (2001)...........................................................................*passim*

*Woods Investment Co. v. Commissioner*,
85 T.C. 274 (1985), *acq.* 1986-2 C.B. 1 ....................................................21

## STATUTES AND REGULATIONS

5 U.S.C. § 553..........................................................................................29

26 U.S.C. § 108 ................................................................................*passim*

26 U.S.C. § 1502 (1998) .....................................................................2, 26

T.D. 9089, 2003-2 C.B. 906, *amended*,
  T.D. 9098, 2003-2 C.B. 1248 ......................................................6, 26, 29, 30

T.D. 9192, 2005-1 C.B. 866, *clarified*,
  I.R.S. Ann. 2006-15, 2006-1 C.B. 632 ....................................................12, 29

Treas. Reg. § 1.1502-11 (1998) .................................................................14, 16

Treas. Reg. § 1.1502-19 (1998) ....................................................................3, 9

Treas. Reg. § 1.1502-32 (1998) ....................................................................3, 9

Treas. Reg. § 1.1502-79 (1998) ..................................................................18, 24

Treas. Reg. § 1.1502-80 (1998) ....................................................................4, 15

## OTHER AUTHORITIES

1 Andrew J. Dubroff, et al., *Federal Income Taxation of Corporations
  Filing Consolidated Returns* § 1.01 (2d ed. rev. 2015)..................................22

I.R.S. C.C.A. 200901031 (Jan. 2, 2009) ...................................................21

I.R.S. C.C.A. 201033031 (Aug. 20, 2010) .................................................5

I.R.S. Notice 94-49, 1994-1 C.B. 358.....................................................26

**INTRODUCTION**

The Government does not and cannot dispute that each member of an affiliated group filing a consolidated return is "the taxpayer" for purposes of applying Internal Revenue Code section 108. Thus, this case turns on a single legal question: did Treasury's consolidated return regulations in effect in 1998, permit a member corporation whose debt was forgiven in bankruptcy to reduce only its allocable portion of the CNOL?[1]

Ignoring the very language from *United Dominion Industries, Inc. v. United States*, 532 U.S. 822, 833 (2001), that it so heavily relies upon, the Government argues that the regulations require Marvel to reduce the consolidated group's entire CNOL because, "absent applicable [statutory or] regulatory authority, a consolidated group may not apportion its CNOL." Brief for the Appellee, ECF No. 48 ("Gov. Br.") at 19; *see also United Dominion*, 532 U.S. at 833 ("statutory or regulatory"). But Marvel had both.

The statute governing this case is section 108. Section 108 requires "the taxpayer" to reduce its NOL, and the Government concedes in this case that each member of the consolidated group is a taxpayer. The consolidated

---

[1] Capitalized terms not defined herein have the meaning set forth in Brief for Petitioner-Appellant, ECF No. 37 ("Br.").

1

return regulations themselves have explicit examples showing that a bankrupt taxpayer-member would reduce its apportionable share of the CNOL.  There are no examples of a taxpayer-member reducing *more* than its apportionable share of the CNOL.

Consistent with the plain language of the relevant statute and the then-existing regulations, each individual taxpayer-member of the Marvel consolidated group that had filed for bankruptcy and received debt relief reduced its apportionable share of the CNOL.  The Government's reading of *United Dominion* turns the consolidated return regime on its head by insisting that the consolidated return regulations are the only law that sets forth rules for consolidated returns.  To the contrary, as the Federal Circuit held in invalidating a consolidated return regulation contrary to the Code, the regulations are an overlay showing how the Code is applied to consolidated returns and not a separate regime displacing it.  In other words, Congress delegated authority to the Treasury to modify how the Code is applied to consolidated returns to ensure the clear reflection of tax liability for both the consolidated group and each member corporation.  Section 1502.  Congress did not permit (nor could it Constitutionally delegate authority to)

Treasury to rewrite a new code for consolidated returns.  *See Rite Aid Corp.*

*v. United States*, 255 F.3d 1357 (Fed. Cir. 2001).

As the case law has recognized, a taxpayer does not need affirmative

guidance to support its position under the consolidated return regulations;

the absence of a restriction or prohibition suffices.  *Gottesman & Co. v.*

*Commissioner*, 77 T.C. 1149 (1981).  Far from providing an explicit

restriction on Marvel's position, both the Code and regulations in effect at

the time *supported* Marvel's position.  The consolidated return regulations in

effect in 1998 had two examples that explicitly applied section 108 to

taxpayer-members of a consolidated group,[2] each of which instructed that

section 108 should be applied by reducing the "consolidated net operating

loss carryover *attributable to [the debtor-member]*."  Treas. Reg. § 1.1502-

19(g), Ex. 5(c) (1998) (emphasis added); *see also* Treas. Reg. § 1.1502-

32(b)(5), Ex. 4(c) (1998) (instructing taxpayers to reduce "[the debtor-

member]'s net operating loss carryover").  The Government dismisses the

Section 108 Examples by vaguely asserting they "would not extend to the

---

[2] *See* Treas. Reg. §§ 1.1502-32(b)(5), Ex. 4 (1998) and 1.1502-19(g), Ex. 5(c)
(1998) (collectively the "Section 108 Examples").

different context presented by this case," Gov. Br. 49, but does not explain why examples in the consolidated return regulations that explicitly apply section 108 do not extend to the "context" of this dispute about how to apply that section.

Consequently, the Government must rely on an upside-down view that consolidated groups and their taxpayer-members are required to point to language in the consolidated return regulations that expressly allows their position. Just the opposite is true. The default rule is that where the consolidated return regulations are silent, a consolidated group will follow the generally applicable Internal Revenue Code. Treas. Reg. § 1.1502-80(a) (1998) (the Code "shall be applicable to the group to the extent the regulations do not exclude its application").

Here, the plain language of section 108 supports Marvel's position. Section 108(b) requires Marvel to "reduce the tax attributes of the taxpayer," including *the taxpayer's* NOL. In this very dispute the Government has conceded that "the taxpayer" as used in section 108(b) means each taxpayer-

member and not the consolidated group.[3]  And if "the taxpayer" refers to the

member corporations, an interpretation the Government does not dispute in

its brief, then the "tax attribute of the taxpayer" to be reduced can only be

the *member's* share of the CNOL.  As the Government concedes, however,

"the CNOL is a group attribute."  Gov. Br. 32.  Indeed, that was the teaching

of *United Dominion*: that the CNOL is only computed at the group level

based on the tax attributes of all of the group members.

The Government's argument that the reference to the taxpayer-

member's NOL in section 108 should be read to mean the entire CNOL of

the group would result in impermissible distortions of income.  Indeed,

Treasury considered and explicitly rejected that reading, determining that

such an approach "would not preserve the location of income in the debtor

member" and instead could shift the burden of the debtor-member's income

───────────────────

[3] I.R.S. C.C.A. 201033031 (Aug. 20, 2010).  As noted in Marvel's opening
brief at page 24, that CCA was issued to IRS agents looking at Marvel's
position in this very controversy.  The IRS admitted in that advice in this
case that "the taxpayer" as used in section 108 refers to the taxpayer-
member, not the consolidated group.  The Government misuses I.R.S. C.C.A.
201033031, *see* Gov. Br. 36, because that guidance from attorneys in the
Office of Chief Counsel (not the Chief Counsel himself as the Government
suggests) is no more authority for the Government's position than the
Government's brief filed with this Court.

to other corporations in the group.  T.D. 9089, 2003-2 C.B. 906, *amended*, T.D. 9098, 2003-2 C.B. 1248.  The Government dismisses with the back of its hand section 108, the Section 108 Examples, and the relevance of who "the taxpayer" is under section 108.  But each of those statutory or regulatory authorities applies here and supports Marvel's position.

Treasury undoubtedly had broad authority to change the rule in section 108 by removing the Section 108 Examples and creating new consolidated return regulations, but it did not exercise that authority until nearly seven years after the events at issue.  And when Treasury effected such a change, it did so only after considering and rejecting the approach advocated by the Government here (i.e., requiring the reduction of the entire CNOL before reducing the other tax attributes of the debtor-member) as too distortive of the "location of income" that should rest with the debtor-member that realized the taxable benefit.  T.D. 9089, 2003-2 C.B. 906.  In light of the statutory and regulatory support for Marvel's position, the Government's argument that reducing only the taxpayer-member's attributable portion of the CNOL would result in an unintended windfall to Marvel is both irrelevant and incorrect.  The Government is bound to follow the Code and regulations in effect in 1998, and those regulations support

Marvel's position.  Moreover, even if the Tax Court is correct that "[t]he pre-2003 consolidated return regulations did not specifically articulate how a consolidated group should reduce its tax attributes under section 108(b)," A140, Marvel's position should still be sustained.  In the absence of regulations on point, section 108 must be applied to the Bankrupt Debtors in the same way that it would to a corporation filing a separate return: reducing only the portion of the group's CNOL attributable to each of the Bankrupt Debtors.

## ARGUMENT

The Government's position that "a CNOL may *not* be apportioned among the consolidated group members if no applicable rule provides for that apportionment," Gov. Br. 26,[4] rests almost exclusively on its fundamental misreading of *United Dominion Industries, Inc. v. United States*, 532 U.S. 822 (2001).[5]  The Supreme Court's decision in *United Dominion*

---

[4] *See also* Gov. Br. 19-20 (arguing that "the members of an affiliated group filing a consolidated return [do not] have separate [NOLs] where no regulation so provides").

[5] The Government's reliance on *United Dominion* permeates each of its arguments.  *See* Gov. Br. 14-30 (arguing *United Dominion* is dispositive); *id.* at 33 (citing *United Dominion* in discussion of plain language of section 108); *id.* at 45-46 (arguing *United Dominion* "effectively overruled" this

*(cont'd)*

rested on its conclusion that the Government's argument was "without any

statutory or regulatory basis." *United Dominion*, 532 U.S. at 833. In

contrast, Marvel's application of section 108(b) in this case is supported by

both the then-existing consolidated return regulations and the plain language

of section 108.

## I. The consolidated return regulations in effect in 1998 support Marvel's position.

The Government argues that Marvel must point to a regulation that

expressly authorizes the apportionment of "the CNOL to a group member

for purposes of reducing [NOLs] under § 108(b)(2)(A) during a

consolidation return year." Gov. Br. 30. The Government is wrong, but

Marvel prevails even under the Government's incorrect standard. In two

examples in effect in the consolidated return regulations in 1998—the

Section 108 Examples—Treasury instructed that section 108(b)(2)(A) was to

be applied by reducing the portion of the CNOL attributable to the member-

—————————————

*(cont'd from previous page)*

Court's precedent in *In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir. 1991);
*id.* at 48-50 (citing *United Dominion* in an effort to distinguish consolidated
return regulations in place in 1998 that support Marvel's application of
section 108); *id.* at 52-54 (arguing that its litigating position does not conflict
with the APA's limits on retroactive regulations because *United Dominion*
had already announced the law).

corporation whose debt had been discharged.  Accordingly, the only two regulations in effect in 1998 that expressly addressed the application of section 108 to corporations that file consolidated returns both supported Marvel's position here.

Both of the Section 108 Examples dealt with the reduction of NOL where the debts of a member of a consolidated group were discharged. Importantly, in neither of the Section 108 Examples was there any indication that the member-debtor corporation left the consolidated group. Nevertheless, in the Section 108 Examples in effect in 1998, Treasury assumed that the CNOL would be apportioned to the debtor-member and that attributable piece of the CNOL would be reduced under section 108(b). Specifically, Treasury distinguished between the exclusion of income under section 108(a)—instructing that COD income would be "excluded from *P group's gross income*"—and the reduction of NOL under section 108(b)— instructing that "[u]nder section 108(b), the remaining $30 of *[the member-debtor]'s net operating loss carryover . . .* is reduced to zero."  Treas. Reg. § 1.1502-32(b)(5), Ex. 4(c) (1998) (emphasis added); *see also* Treas. Reg. § 1.1502-19(g), Ex. 5(c) (1998) (instructing that the debt "discharge is excluded from the *P group's* gross income," while simultaneously requiring

that "$40 of the $50 consolidated net operating loss carryover *attributable to [the debtor-member]* is eliminated under section 108(b)" (emphasis added)).

Contrary to the Government's attempt to distinguish them, the Section 108 Examples are both relevant and instructive. By intentionally differentiating between the income of the consolidated group and the CNOL apportioned to the debtor member, Treasury "assumed some form of apportionment" of the CNOL in the exact "context presented by this case." Gov. Br. 49. The question of "whether any other member of the group had net operating losses," Gov. Br. 50, is therefore beside the point; if Treasury wanted to treat the CNOL as unapportionable, it would have provided for the reduction of the *group's CNOL* and not the portion of the CNOL attributable to a specific member.

Moreover, the argument that Marvel is attempting to "override the text of the regulations governing consolidated net operating losses" actually highlights the infirmities in the Government's case. Gov. Br. 49; *see also id.* at 50. The Government argues that the CNOL is the "exclusive concern" of Treasury Regulation section 1.1502-11. Gov. Br. 27. Were that the case, there would have been no need for Treasury to later eliminate the Section 108 Examples. Nevertheless, the Government argues that, because that

regulation does not provide for the apportionment of CNOL, Marvel was not permitted to do so.  As discussed above, however, the Section 108 Examples instructed taxpayers to apportion the CNOL to specific members for purposes of applying section 108.

The Government's argument that Marvel is attempting to use the Section 108 Examples to "override" portions of the consolidated return regulations is incorrect.  Marvel is not, as the Government casually asserts, trying to apply the Section 108 Examples out of their proper contexts. Indeed, every exclusion of income under section 108 necessarily affects the excess loss accounts and investment adjustments for groups and their members.[6]  It is precisely for that reason that Treasury had to amend the Section 108 Examples in 2005 to remove the existing instructions on the application of section 108 and replace them with amended examples consistent with its new rule.  And because there is no context for the Section 108 Examples different from the circumstances in this case, the Government's argument asks this Court to rule that two provisions in the

_____

[6] Both excess loss accounts and investment basis adjustments are basis calculations intended to preserve the tax identity of each member while ensuring the proper location of income and loss.

consolidated return regulations—the Section 108 Examples and Treasury Regulation section 1.1502-11—contradicted one another.

The Section 108 Examples provided the most specific guidance regarding the application of section 108 to members of a consolidated group. Notably, each differentiated between the income of the group and the CNOL apportionable to a single member. Accordingly, until these examples were eliminated,[7] the only applicable and controlling consolidated return regulations supported Marvel's position that the group's CNOL was properly apportioned to the individual members for purposes of applying section 108.

## II. The Government does not dispute that the "taxpayer" for purposes of section 108 is the taxpayer-member, not the group.

As discussed above, the Treasury Regulations in place in 1998 applying section 108(b) to consolidated returns assumed a portion of a group's CNOL should be apportioned to its bankrupt debtor-member. Apportioning the CNOL for purposes of applying section 108(b) is also consistent with the plain language of section 108 itself.

_____

[7] Treasury eliminated the Section 108 Examples in 2005 when it issued conflicting regulations. *See* T.D. 9192, 2005-1 C.B. 866, *clarified*, I.R.S. Ann. 2006-15, 2006-1 C.B. 632.

Through section 108(b), Congress required the reduction of "the tax attributes of *the taxpayer*" if COD Income is excluded under section 108(a). Section 108(b)(1) (emphasis added). And, as Congress, the IRS, and the courts have each recognized, the term "the taxpayer" as used in the Code refers to individual corporations, not to a consolidated group. *See* Br. 24-29. Indeed, nowhere in its brief does the Government contend that "the taxpayer" as used in section 108 should be read to refer to Marvel's consolidated group.[8] The Government's arguments that the plain language of section 108 supports its proposed application of section 108(b) in this case— notwithstanding its concession that "taxpayer" means the individual member-corporation—are unavailing.

*First*, the Government argues that Congress's reference in section 108 to "the taxpayer" (i.e., the individual corporation) is irrelevant because the Code section at issue in *United Dominion* also referenced "the taxpayer" and

---

[8] Tellingly, the Government never actually quotes the language of section 108. Instead, the Government paraphrases the statute, omitting the critical Congressional mandate that section 108 be applied by "the taxpayer" to reduce its tax attributes. *See* Gov. Br. 10 ("[T]he amount excluded [under § 108(a)(1)] must be applied to reduce tax attributes [*of the taxpayer*] under § 108(b).").

the Supreme Court nonetheless held that PLLs must be computed at the group level. *See* Gov. Br. 33-34.[9] Had Treasury not issued any regulations about the computation of NOLs for consolidated groups, "the taxpayer" as used in section 172 would have been read to mean the member corporation. Treasury, however, had already issued regulations addressing the calculation of CNOLs and PLLs that specified that such calculations were properly made at the consolidated group level. *See* Treas. Reg. § 1.1502-11 (1998). Accordingly, the general rules prescribed in section 172 for the calculation of NOLs and PLLs had been modified by then-existing regulations and the language of that statute was no longer controlling for consolidated returns. In contrast, the regulations in place in 1998 related to the application of 108 actually supported Marvel's position that "the taxpayer" must refer to member corporations and not the group.

*Second*, the Government argues that reading "the taxpayer" to mean the member-corporation "ignores the Congressional delegation of authority to the Secretary to provide rules for affiliated groups of corporations filing

---

[9] The Government actually states that "[t]he Supreme Court nevertheless held that the CNOL could not be apportioned." Gov. Br. 33. As discussed above, however, that was not the holding of *United Dominion*.

consolidated returns." Gov. Br. 34. Marvel does not ignore or otherwise dispute that the Treasury has broad authority to modify the general application of the Code for consolidated groups. The Government, however, is required to actually exercise that authority before it mandates that consolidated groups deviate from the generally applicable rule. *See* Treas. Reg. § 1.1502-80(a) (1998). Where, as here, a taxpayer's position is consistent with the governing statute and there is no consolidated return regulation providing a contrary result, the taxpayer's position must be upheld.

*Third*, the Government argues that the NOL of the taxpayer-member for purposes of section 108(b)(2)(A) means the entire CNOL of the consolidated group. Gov. Br. 36-37. That argument is spurious. As the Government concedes elsewhere, the CNOL is not an attribute of any single member. Instead, "the CNOL is a group attribute." *Id.* at 32; *see also United Dominion*, 532 U.S. at 830-34 (holding that CNOL must be calculated at the group level). Because the CNOL is a tax attribute *of the group* and not a tax attribute *of the member-taxpayer*, the NOL for purposes of section 108(b) cannot mean the group's CNOL under that statute's plain language. Thus, Marvel applied section 108 by reducing the portion of the

group's CNOL attributable to each member, an apportionment expressly required under the consolidated return regulations when a member leaves the group and not foreclosed by the regulations in other circumstances.[10]  Indeed, the Section 108 Examples illustrate that apportionment was appropriate in the very context of the application of section 108.

## III.    Unlike the position rejected in *United Dominion*, Marvel's position has regulatory and statutory support.

The Government ignores the statutory and regulatory authority cited above, arguing that *United Dominion* stands for the proposition that "a CNOL is a unitary tax attribute that may not be apportioned during a consolidated return year absent express regulatory authority."  Gov. Br. 25. Fundamentally, the Government argues that the Supreme Court held that a consolidated return regulation that only governs how to compute a group's CNOL (Treas. Reg. § 1.1502-11) also mandates when CNOL can be apportioned among the group members.  Accordingly, it is the Government, not Marvel, that improperly seeks to extend the reach of a regulation beyond

_____

[10] Moreover, the Government's proposed reading of "the taxpayer's NOL"— i.e., to mean the entire CNOL of the group—can improperly shift the debtor-member's income to other members of the consolidated group.  *See infra* p. 26 n.20.

its intended context.  *See* Gov. Br. 49 (citing *United Dominion*, 532 U.S. at 833-34).

The Government's argument that *United Dominion* addressed the apportioning of a group's CNOL rests not on sound legal reasoning, but instead on improperly isolating quotes from the critical context of the issues actually before the Supreme Court.[11]  For example, the Government emphasizes the Supreme Court's statement that the "consolidated NOL" is "the exclusive concern of § 1.1502-11(a)," arguing that language supports its position that Treasury Regulation section 1.1502-11(a) forbids the apportionment of CNOL unless specifically overridden by another regulation.  Gov. Br. 27 (citing *United Dominion*, 532 U.S. at 834).  Isolated from the context of the issue before the Court, however, the Supreme Court's statement would be demonstrably false.  Indeed, one need look no

---

[11] As the Government concedes, *United Dominion* was a case about how a consolidated group is required to compute its NOLs and PLLs.  Gov. Br. 15 ("[T]he Supreme Court had held that a consolidated group's [PLL] (which makes up a part of the group's [NOL]) must be *figured* on a consolidated, single-entity basis, rather than by *aggregating* product liability losses separately determined company by company." (emphasis added)).  The Court never reached the question of how and when the CNOL, after it has been calculated, may be apportioned to group members.  Br. 15-24.

further than the Supreme Court's previous sentence to see that the Supreme Court was aware that CNOL was not exclusively addressed in section 1.1502-11(a) but also in other consolidated return regulations (e.g., Treasury Regulation section 1.1502-79, the regulation that the Supreme Court was distinguishing). *United Dominion*, 532 U.S. at 833-34. Accordingly, the only way to reconcile that Court's statement with the consolidated return regulations is to understand that the Court was actually noting "the exclusive concern of § 1.1502-11(a) with *[the computation of]* consolidated NOL." *Id.* at 834.

Moreover, the Supreme Court's observation that "[s]ection 1.1502-79(a)(3) unbakes the cake for only one reason" is not a broad holding about when CNOL may be apportioned. *Id.* at 833. It is instead the Supreme Court rejecting the Government's attempt to use Treasury Regulation section 1.1502-79—a section about apportionment of CNOL where a member leaves the group—as a guide for computing CNOL. Indeed, the

Government in this case makes the same mistake it did in *United Dominion*.[12]

When properly limited to the question of how to compute CNOL, those quotes are both undisputed by the parties and entirely irrelevant to the issue before this Court.[13] The Government admits that the issue in *United Dominion* was the method for computing or determining a group's PLL (which is a portion of its CNOL), but argues that the question of when and how a group's CNOL can be apportioned was a "central prerequisite" to the Supreme Court's holding. Gov. Br. 24. That argument, however, makes no sense. The question of how and when to apportion that CNOL *after it has*

[12] In *United Dominion*, the Government attempted to use a regulation regarding the apportionment of a group's CNOL to override the regulations regarding how CNOL is computed. Here, the Government does the opposite, citing a regulation regarding the computation of CNOL and arguing that controls how the CNOL can be apportioned. The Government's attempts to confuse regulations regarding CNOL computation with those regarding CNOL apportionment are no more proper in this case than they were in *United Dominion*.

[13] For example, Marvel agrees that "[t]here is no definition of separate NOL for a member of an affiliated group" for purposes of calculating the group's CNOL. *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 829 (2001). And because CNOL (including PLL which is a part of NOL) must be computed at the group level, "the concept of separate NOL simply does not exist" for determining the CNOL of consolidated groups. *Id.* at 830 (citation omitted).

*been computed* by definition can only arise *after the CNOL has been computed*.  Thus, the apportionability of a group's CNOL could never have been a prerequisite to the Supreme Court's holding.  In arguing that the Supreme Court gratuitously addressed an issue it was not asked to and did not need to reach, the Government "asks too much" of quotes improperly isolated from the critical context of the issues actually in dispute in *United Dominion*.  Gov. Br. 36.

Unlike the Government's position in *United Dominion* that was "without any statutory or regulatory basis," *United Dominion*, 822 U.S. at 833, there were no regulations in place in 1998 that contradicted Marvel's application of section 108 on a member-by-member basis.  To the contrary, the then-existing regulations and section 108 each *supported* Marvel's

position in this case.[14]  Accordingly, *United Dominion* simply does not

support the Government's position in this case.[15]

Finally, the Government broadly describes the "critical issue" in this

case as "whether the pre-2003 consolidated return regulations allow for the

_____

[14] There is little to be gained from a debate regarding who qualifies as a leading commentator in the field of consolidated return regulations.  *Compare* Gov. Br. 23 n.6 *with* Br. 16.  Hennessey and Dubroff literally wrote the books on the subject.  *See* I.R.S. C.C.A. 200901031 (Jan. 2, 2009) at note 4 and accompanying text (citing the Hennessey and Dubroff treatises and describing the authors as "leading commentators in the field").

[15] The Government attempts to justify the Tax Court's reading of *United Dominion* by arguing that reading is compelled as a policy matter.  Specifically, the Government argues that because all members of a consolidated group share the benefits of the group's CNOL, the group's entire CNOL must be subject to reduction under section 108(b).  *See* Gov. Br. 22, 29.  The Government's argument—which contradicts the plain language of section 108—is an argument for lawlessness and results-oriented application of a regulation without any explicit rule modifying section 108 and should be rejected accordingly.  *See Woods Inv. Co. v. Commissioner*, 85 T.C. 274, 281-82 (1985) (stating that "judicial interference . . . is not warranted to alter the result [a double tax benefit]," that the court "will apply [the consolidated return] regulations and the statute as written," and that the Government "should use [its] broad power to amend [its] regulations"), *acq.* 1986-2 C.B. 1.  Moreover, the reduction of only the portion of the CNOL attributable to the member of the group in bankruptcy aligns with the general result under bankruptcy law, pursuant to which only the debts of corporation in bankruptcy (and not any affiliated corporation) may be discharged.  The Government was free to remove this parallel result by modifying the unambiguous language of section 108 as applied to consolidated returns, but it did not exercise that authority until nearly seven years after the events at issue in this case.

separate-entity approach." Gov. Br. 25 (quoting A131). To the extent that it suggests that a consolidated group is either treated as a single entity for all tax purposes or treated as a separate entity for all purposes, the Government is wrong. *See* 1 Andrew J. Dubroff, et al., *Federal Income Taxation of Corporations Filing Consolidated Returns* § 1.01 (2d ed. rev. 2015) ("The current rules treat the members of a consolidated group as a single entity for many purposes, but as separate entities for many other purposes."). Accordingly, no preference for the single-entity approach can be divined from the Supreme Court's decision in *United Dominion*.

IV. **Under *Prudential Lines* and similar cases, the members of Marvel's consolidated group owned the portion of the CNOL attributable to their activities.**

In contrast to the Government's position that "a CNOL is a unitary tax attribute that may not be apportioned" unless a corporation leaves the group, Gov. Br. 25, this Court held in *In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir. 1991), that each member of a consolidated group owns the portion of the CNOL attributable to its operations *even while still a member of the group*. Specifically, in *Prudential Lines*, this Court upheld a preliminary injunction granted by the bankruptcy court that prevented the consolidated group of which the debtor was a member from taking action that would

diminish the value of the bankrupt's NOL, holding that the debtor "had an interest in the $74 million NOL attributable to its pre-bankruptcy operation." *Prudential Lines*, 928 F.2d at 571. That holding, based on the rights created by the Code,[16] forecloses the Government's position in this case.

The Government attempts to distinguish *Prudential Lines* on two grounds, each of which is incorrect.[17] *First,* the Government argues that *Prudential Lines* does not apply here because that decision should be narrowly read to stand for the proposition that "because the debtor would no longer be a member of the consolidated group when it emerged from

_____

[16] *In re Prudential Lines Inc.*, 928 F.2d 565, 569 (2d Cir. 1991) (holding that "[t]he nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law" and looking to the Code and Treasury Regulations).

[17] The Government's argument that Marvel is precluded from raising *Prudential Lines* on appeal is baseless. *See* Gov. Br. at 40-43. Marvel cites the case for the proposition that the "attribute of a member-taxpayer subject to reduction under section 108(b) . . . is the member-taxpayer's share of the CNOL, not the entire CNOL," which is the precise issue disputed by the parties in this case and decided by the Tax Court below. Br. 36. On appeal, a party may raise any case or other authority—even new authority—in support of its properly preserved arguments. *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006) ("[A]ppeals courts may entertain additional support that a party provides for a proposition presented below."). Moreover, as the Government itself concedes, Marvel cited *Prudential Lines* in briefing before the Tax Court below. Gov. Br. 40 n.11.

bankruptcy, it should be able to carry with it that portion of the group's CNOL apportioned to it under the § 1.1502-79 regulation." Gov. Br. 45. The Government's argument, however, is directly contradicted by the ruling in that case.

The bankruptcy plan contemplated at the time of the decision in *Prudential Lines* would have resulted in the bankrupt corporation's departure from the consolidated group, *Prudential Lines*, 928 F.2d at 570, but the Court did not rely upon that fact in reaching its holding.[18] As this Court explained, "[t]he filing of a bankruptcy petition by one of the members of the group does not mandate a deconsolidation of the group." *Id.* at 569; *see also* Br. 38 n.21. And, importantly, this Court reached its decision that the member corporation "had an interest in the $74 million NOL attributable to its pre-bankruptcy operation" based on the member

_____

[18] In its analysis of whether the attributable portion of the CNOL was an asset of the bankrupt corporation, this Court did cite the section of the consolidated return regulations regarding the apportionment of CNOL when a corporation leaves the consolidated group (Treas. Reg. § 1.1502-79) but only as an example to support the broader statement that "a corporation does not lose any interest it had in the right to use its NOL" when it is part of a consolidated group. *Prudential Lines*, 928 F.2d at 571. No mention was made in that analysis of whether the bankrupt corporation would be leaving the consolidated group. *Id.* at 569-71.

corporation's rights "at the commencement of the bankruptcy case against it."
*Prudential Lines*, 928 F.2d at 571. Accordingly, the fact that the particular
bankruptcy plan being proposed at the time this Court rendered its decision
contemplated the debtor's exit from the consolidated group was irrelevant.
As of the time the bankruptcy petition was filed, it was necessarily uncertain
whether the corporation would remain in or leave the consolidated group.[19]

*Second*, the Government argues that, even if Marvel's reading of
*Prudential Lines* is correct, "the decision has been effectively overruled by
*United Dominion*." Gov. Br. 45. But as discussed above, *United Dominion*
is a case about the *calculation* of a group's CNOL, not the *apportionment* of
the CNOL once calculated, and certainly not about the rights in bankruptcy

_____

[19] Indeed, in contrast to the Government's mischaracterization of *Prudential Lines* as a case about "whether, after confirmation of a subsidiary's reorganization plan, the parent could claim a worthless-stock deduction for a prior year with respect to its stock in the subsidiary," Gov. Br. 43, the ultimate fate of the bankrupt corporation remained in doubt as of the time of this Court's decision. As of the time of this Court's decision, the bankruptcy plan had not been confirmed. *Prudential Lines*, 928 F.2d at 570 ("[C]onfirmation of the reorganization plan and the concomitant change in ownership of PLI *will cause* PLI's departure from the group." (emphasis added)). Moreover, the case involved a request for a preliminary injunction through which the creditor's committee sought to prevent the parent of the consolidated group from claiming a worthless stock deduction *prior to the confirmation* of the bankruptcy plan. *See id.* at 678.

of creditors and debtors.  If anything, the fact that the Government must

contend that *United Dominion*, a technical tax case, overruled *sub silentio*

the bankruptcy precedents of numerous Courts of Appeals casts doubt on its

interpretation of *United Dominion*.[20]  Moreover, other Courts of Appeals

have continued to cite *Prudential Lines* without any indication that it was

undermined by *United Dominion*.  *In re Majestic Star Casino, LLC*, 716

F.3d 736 (3d Cir. 2013).[21]

---

[20] For other distortions caused by the Government's over-reading, see Br.
20-22 (noting other potential distortions caused by the Government's
reading of *United Dominion*).  Additionally, Treasury rejected the approach
advocated by the Government here—i.e., requiring "the reduction of
consolidated attributes [like CNOL] attributable to other members prior to
the reduction of all of the attributes attributable to the debtor member"—
because it "would not preserve the location of income in the debtor member."
T.D. 9089, 2003-2 C.B. 906, *amended*, T.D. 9098, 2003-2 C.B. 1248.
Congress mandates that the consolidated return regulations be drafted "in
such manner as clearly to reflect the income-tax liability" of both the
consolidated group "*and of each corporation in the group*."  Section 1502
(1998) (emphasis added).  Accordingly, "preserving the location of items
within a group is essential to the operation of the Code and consolidated
return regulations."  I.R.S. Notice 94-49, 1994-1 C.B. 358.

[21] The *Majestic Star Casino* case did not involve a tax sharing agreement.
*See* Gov. Br. 47 (distinguishing cases cited by Marvel on basis that they
involved contractual agreements).

The Government cites *In re Marvel Entertainment Group, Inc.*, 273 B.R. 58
(D. Del. 2002), in support of its position that *Prudential Lines* was
"effectively overruled" by *United Dominion*.  Gov. Br. 45.  The District of

*(cont'd)*

**V.  The legislative history of section 108 does not justify the Government's position in this case.**

The Governments relies heavily on selected quotes from the legislative history of section 108(b) for its argument that the entire CNOL of a consolidated group must be reduced when any one taxpayer-member has COD income.  Specifically, the Government contends that the legislative history demonstrates that section 108 merely provides for deferral, not exclusion, and thus that Marvel would receive an unjustified windfall if it prevailed.  Of course, quotes from the legislative history cannot override the plain text of section 108 (in particular, its use of the words "the taxpayer").  *See* Br. 24-25.  Even if they could, the Government's reading of the legislative history (and of the statutory structure) is incomplete.  Congress did intend that, in many circumstances, section 108 would result only in deferral of COD income.  *See* Gov. Br. 38.  But the story does not end there.  Congress simultaneously recognized that section 108(b) is drafted such that

_____

*(cont'd from previous page)*

Delaware's decision in that case, however, rests on the same over-reading of *United Dominion* that the Tax Court adopted in this case.  Under a proper reading, *United Dominion* did not address the apportionment of a CNOL and, indeed, the Third Circuit—the circuit in which an appeal from the District of Delaware would lie—cited *In re Prudential Lines* favorably in *Majestic Star Casino* years after *United Dominion* was decided.

it will create a permanent exclusion of income in certain cases for some taxpayers. *See* Br. 29-34; *see also* Gov. Br. 39 ("To be sure, if all of the tax attributes listed in § 108(b)(2) are exhausted, the exclusion for any remaining COD income becomes 'permanent.'"). Where the legislative history demonstrates that Congress was aware that section 108 would result in situations both of deferral and of exclusion, the Government cannot credibly contend that Marvel's position in this case contravenes congressional intent.

## VI. The Government seeks to use litigation to skirt the APA's notice and comment requirements.

The Government misconstrues Marvel's argument regarding the APA. Marvel does not argue, as the Government suggests, that the decisions of the Tax Court (or any other court) that *interpret* the existing consolidated return rules are subject to notice and comment. *See* Gov. Br. 52.[22] Instead, Marvel argues that where, as here, the IRS and Treasury insist that the law that

---

[22] Marvel is also not invoking the APA as an independent ground for invalidating any regulations. Instead, Marvel raises the APA simply to demonstrate the important context in which new consolidated return rules are promulgated, and the resulting effect on the proper manner in which consolidated return regulations should be construed. Accordingly, the Government's argument that Marvel's APA argument has been waived is irrelevant.

existed in 1998 mandated the same result as is required under regulations in 2005 that indisputably changed the law, the IRS and Treasury have moved beyond asking for an interpretation of applicable regulations. Instead, the Government is effectively seeking the retroactive application of a later-announced rule, thereby circumventing the APA mandate that binding consolidated return regulations be effective only prospectively after publication, notice, and comment. *See* 5 U.S.C. §§ 553, 553(d); Br. 43-45.

As objectively demonstrated by the process of completing the consolidated return regulations finalized in 2005, Congress has good reason to insist on an opportunity for public comment prior to the issuance of new regulations that will carry the force of law. A version of the regulations regarding the application of section 108 was first proposed in 2003. *See* T.D. 9089, 2003-2 C.B. 906, *amended*, T.D. 9098, 2003-2 C.B. 1248. Taking into account issues raised by the public, Treasury proposed two more sets of amended regulations before issuing the final regulations that incorporated still further revisions. *See* T.D. 9192, 2005-1 C.B. 866, *clarified*, I.R.S. Ann. 2006-15, 2006-1 C.B. 632. Indeed, as part of the careful process of developing the final regulations in effect today, Treasury considered and rejected the exact application of section 108 that would result from the

Government's proposed interpretation of *United Dominion*, deciding that the reduction of the entire group's CNOL "prior to the reduction of all of the attributes attributable to the debtor member" would not meet the Code's objective of "preserving the location of future income" among the members of the consolidated group. *See* T.D. 9089, 2003-2 C.B. 906.

Nonetheless, the Government advocates looking to 2003 temporary regulations, finalized in 2005, that "directly addressed the application of I.R.C. § 108 to consolidated groups and their members" to govern Marvel's 1998 tax treatment. And even if it did not explicitly ask the Tax Court to apply the new regulations retroactively, the Government effectively did so. *See* Gov. Br. 52-53. Despite the fact that, in 1998, the then-existing regulations specifically addressing the application of section 108 to members of a consolidated group (i.e., the Section 108 Examples) actually supported Marvel's position in this case, the Government argues that the Tax Court "rested its decision on 'the pre-2003 consolidated return regulations,' as interpreted by the Supreme Court in *United Dominion*." Gov. Br. 53. Even putting aside the fact that *United Dominion* never reached the disputed issues in this case for the reasons described above, neither the Government nor the Tax Court should be permitted to rely on case law to create a new

legislative rule applicable to consolidated groups. In 1998, no authority supported the Government's position that the entire CNOL was a tax attribute of a taxpayer-member. Instead, for the reasons discussed above, it is only "the taxpayer's" tax attributes (i.e., the tax attributes of the debtor-member) that are subject to reduction under section 108(b).

The Tax Court acknowledged that "[t]he pre-2003 consolidated return regulations did not specifically articulate how a consolidated group should reduce its tax attributes under section 108(b)." A140. That should have decided the question because, in the absence of an express rule to the contrary, the Tax Court was compelled to apply section 108 to the Bankrupt Debtors in the same way that it would to a corporation filing a separate return: reducing only the portion of the group's CNOL attributable to the Bankrupt Debtors. By citing case law to affirm the Government's position *despite the fact that Treasury had not promulgated any regulations* specifically addressing the application of section 108 to members of a consolidated group, the Tax Court allowed the *Government* to subvert the requirements under section 1502 and the APA and to create new binding rules retroactively applicable to consolidated groups through litigation rather than through legislative regulations issued only prospectively and pursuant

31

to notice and comment.  For the reasons described above, Marvel's reasonable application of section 108—which was consistent with the then-existing statutes and regulations—should be sustained.

## CONCLUSION

For the foregoing reasons, the Tax Court's judgment should be reversed.


May 13, 2016                                        Respectfully submitted,

                                                   /s/ B. John Williams, Jr.
                                                   B. John Williams, Jr.
                                                   David W. Foster
                                                   Nathan P. Wacker
                                                   SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP
                                                   1440 New York Avenue, NW
                                                   Washington, DC  20005

                                                   Sonja Schiller
                                                   SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP
                                                   155 N. Wacker Drive
                                                   Chicago, IL  60606

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned counsel hereby certifies that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B).

1.  Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 6,806 words, including headings, footnotes and citations.

2.  The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

May 13, 2016

/s/ B. John Williams, Jr.
B. John Williams, Jr.